**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION**

| | | |
|---|---|---|
| **ELEANOR McCULLEN, JEAN** | ) | |
| **BLACKBURN ZARRELLA,** | ) | |
| **GREGORY A. SMITH, CARMEL** | ) | |
| **FARRELL,** and **ERIC CADIN,** | ) | |
| | ) | **Civil Action No._____** |
| Plaintiffs, | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MARTHA COAKLEY,** Attorney | ) | |
| General for the COMMONWEALTH OF | ) | |
| MASSACHUSETTS**,** | ) | |
| | ) | |
| Defendant. | ) | |

_____

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS,
DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF**
_____

## I.    PRELIMINARY STATEMENT

1.    This is a civil rights action brought pursuant to 42 U.S.C. § 1983 challenging the constitutionality, facially and as applied, of Mass. Gen. L. chapter 266: Section 120E1/2(b), as amended, which creates a fixed buffer with a radius of 35-feet (hereafter, "zone") around the entrances, exits, and driveways of reproductive health care facilities that perform abortions (hereafter, "the Act").  A copy of the Act is attached hereto as Ex. 1.

2.    The Act is an unconstitutional regulation designed and intended to ban virtually all citizens from engaging in fundamental rights and liberties on significant portions of public sidewalks and streets adjacent to non-hospital abortion clinics. It

essentially and unlawfully privatizes public ways held in the public trust for use by all citizens.

3.     The Act chills and deprives Plaintiffs and third parties from engaging in expressive activities guaranteed by the First and Fourteenth Amendments to the United States Constitution.  Preliminary and permanent injunctive relief is warranted.

## II.     JURISDICTION AND VENUE

4.      This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1983. The Court has jurisdiction over the request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

5.     Venue is proper in the District of Massachusetts, Boston Division, pursuant to 28 U.S.C. § 1391(b) because the claims arise in that district and a majority of the parties reside in that district.

## III.     IDENTIFICATION OF PARTIES

6.     Plaintiff Eleanor McCullen is a citizen of the United States and a resident of Chestnut Hill, Massachusetts.  She is a 71 year-old mother and grandmother.  She has never been arrested.

7.     Plaintiff Jean Blackburn Zarrella is a citizen of the United States and a resident of Lynnfield, Massachusetts.  She is an 81 year-old mother and grandmother. She has never been arrested.

8.     Plaintiff Gregory A. Smith is a citizen of the United States and a resident of Stoughton, Massachusetts.  He is a 74 year-old father and grandfather.

9.      Plaintiff Carmel Farrell is a citizen of the United States and a resident of Plymouth, Massachusetts.  She is a 61 year-old mother and grandmother.  She has never been arrested.

10.     Plaintiff Eric Cadin is a citizen of the United States and a resident of Weymouth, Massachusetts.  He is a 27 year-old single adult male who is studying pre-med at Harvard University.  He has never been arrested.

11.     Defendant Martha Coakley is Attorney General for the Commonwealth of Massachusetts and, in that capacity, is the chief law enforcement officer for the Commonwealth. She is charged with overseeing prosecutions for violations of the Act. She is sued in her official capacity only.

## IV.      ALLEGATIONS OF FACT

12.     Subsection (b) of the Act states,

No person shall knowingly enter or remain on a public way or sidewalk adjacent to a reproductive health care facility within a radius of thirty-five feet of any portion of an entrance to, exit from, or driveway of a reproductive health care facility, or within the area within a rectangle created by extending the outside boundaries of any entrance to, exit from, or driveway of, a reproductive health care facility in straight lines to the point where such lines intersect the sideline of the street in front of such entrance, exit or driveway. This subsection shall not apply to the following:

persons entering or leaving such facility;

employees or agents of such facility acting within the scope of their employment;

law enforcement, ambulance, firefighting, construction, utilities, public works and other municipal agents acting within the scope of their employment;

persons using the public sidewalk or street right-of-way adjacent to such facility solely for the purpose of reaching a destination other than such facility.

13.     Subsection (c) of the Act provides that subsection (b) shall take effect during a facility's business hours and if the area contained within the radius and rectangle described in said subsection (b) is clearly marked and posted.

14.     Subsection (d) of the Act makes criminal a violation of subsection (b) of same, providing that,

> [w]hoever knowingly violates this section shall be punished, for the first offense, by a fine of not more than $500 or not more than three months in a jail or house of correction, or by both such fine and imprisonment, and for each subsequent offense, by a fine of not less than $500 and not more than $5,000 or not more than two and one-half years in a jail or house of correction, or both such fine and imprisonment.

15.     Subsection (e) of the Act makes it unlawful to obstruct, detain, hinder, impede or block another person's entry to or exit from a reproductive health care facility. Plaintiffs do not challenge this subsection.

16.     The Act was adopted on a purported emergency basis and became effective on November 13, 2007, the date the Act was signed by the Governor.

17.     The stated underlying purpose for the Act, as set forth in the preamble to the bill introduced and numbered Senate Bill 1353, is to comply with the State's fundamental obligation to preserve public safety by creating clearly defined boundaries to improve the ability of safety officials to protect the public -- specifically pedestrians travelling peacefully on Massachusetts streets and sidewalks.   *See* Senate Bill 1353, attached hereto as Ex. 2.

18.     By its plain terms, the Act applies only to reproductive health care facilities that perform abortions. Hospitals in which abortions are performed are excluded from the Act.

19.     Plaintiffs are pro-life advocates motivated to oppose the practice of abortion because of their religious and/or moral beliefs that induced abortion is the deliberate destruction of innocent human life.  Plaintiffs regularly travel to the public ways adjacent to reproductive health care facilities in Massachusetts to peacefully provide information about abortion alternatives and to offer assistance and support to persons entering and/or exiting the facility.

20.     As part of their ministry and/or peaceful pro-life advocacy, Plaintiffs offer secular and religious literature to persons approaching reproductive health care facilities (hereinafter "clinic clients"). Plaintiffs do this in an effort to educate clinic clients and others that alternatives to abortion are available, including adoption and other means of support, including financial and/or emotional support.

21.     In addition to distributing literature, one or more Plaintiffs engage in other peaceful expressive activities on the public ways adjacent to reproductive health care facilities including oral advocacy, counseling, and prayer.

22.     Pro-life advocates have been educating and counseling men and women on the public ways adjacent to reproductive health care facilities in Massachusetts since 1983 or before.

23.     Plaintiffs desire to orally communicate with clinic clients and passersby from a distance in which they can speak in a normal conversational tone and make eye contact.  Plaintiffs wish to avoid raising their voices or speaking from long distances.

24.     Because in most instances they cannot identify clinic clients until they actually approach the reproductive health care facility, Plaintiffs and other pro-life advocates must station themselves on the public ways near the path of pedestrians and in

close proximity to facility entrances and driveways in order to effectively communicate their message.  On many occasions, clinic clients and/or their companions willingly receive such oral communications

25.     In order to effectively distribute literature to clinic clients and other persons entering or exiting reproductive health care facilities, Plaintiffs and other pro-life advocates must stand on public sidewalks and streets near the path of pedestrians so they can proffer literature near the hands of passersby.  On many occasions, clinic clients and/or their companions willingly receive such literature.

26.     Plaintiffs and other pro-life advocates often encounter opposition from pro-choice advocates who surround, cluster, yell, make noise, mumble, and/or talk loudly to clinic clients for the purpose of disrupting or drowning out pro-life speech and thwart Plaintiffs' efforts to distribute literature.  When this happens, pro-life advocates cannot be heard or distribute literature unless they are in close proximity to their intended audience.

27.     Since the enactment of the Act, facility employees and/or agents stand idly on the public sidewalks and streets inside the zone including its outermost edge. Sometimes they smoke, drink coffee, or make phone calls and at other times they engage in conversation with each other.  They do this even when clinic clients are not present.

28.     Sometimes persons accompanying women seeking abortions will come out of the facility and linger within the area encompassed by the zone to smoke cigarettes, make phone calls, or stand around for no apparent purpose.

29.     On or about November 14, 2007, a sign was posted and a line was drawn in yellow paint in a 35-foot radius around the entrances to Allston-Brighton Planned Parenthood, 1055 Commonwealth Avenue, Boston, which is located at the corner of

Commonwealth Avenue and Alcorn Street (hereafter, "Allston-Brighton Planned Parenthood"). The marked zone covers all but 12 or so inches of the public sidewalk directly in front of the facility and adjacent to Commonwealth Avenue. The zone extends approximately 6 feet into Alcorn Street parallel to Commonwealth Avenue and approximately 12 feet around the corner down Alcorn Street. In addition, there is a 35-foot zone marked around the rear entrance to the facility. The rear zone encompasses nearly the entire street (Gardner Street) adjacent to the rear entrance.

30.    Immediately after significant snow accumulations the streets adjacent to Allston-Brighton Planned Parenthood are plowed. The snow is pushed out of the street and onto or near the public sidewalk. Often when this happens the piled snow directly in front of Allston-Brighton Planned Parenthood occupies large portions of the public sidewalk from the curb of the street inward, or portions of the street from the curb outward. This area is within the marked zone or adjacent to it. When covered with snow, street and sidewalk markings cannot be seen. Plaintiffs will be unable to access the sidewalk for expressive activities after such storms if the zone remains in effect. Neither will they be able to stand near the path of pedestrians.

31.    Plaintiff McCullen has been offering information about alternatives to abortion and providing offers of support to incoming clients and others at Allston-Brighton Planned Parenthood, at which abortions are performed, for the past 7 years. On numerous occasions women seeking abortion changed their minds as a result of McCullen's sidewalk counseling. McCullen's experience has been that her counseling is effective when offered to the recipient in a normal conversational tone and in a friendly and gentle manner. She always tries to stand near the path of pedestrians.

32.     Plaintiff McCullen has degenerative arthritis in her left knee, which severely limits her mobility.  Since the Act took effect there have been several occasions when clinic clients entered the marked zone at Allston-Brighton Planned Parenthood from the side opposite where McCullen was standing.  McCullen was unable to navigate around the zone before the clients entered the facility and thus was unable to effectively communicate her message.

33.     Plaintiff Zarrella has been has been offering information about alternatives to abortion and providing offers of support to incoming clients for the past 17 years.  On numerous occasions women seeking abortion changed their minds as a result of Zarrella's sidewalk counseling.   Zarrella's experience has been that her counseling is effective when offered to the recipient in a normal conversational tone and in a friendly and caring manner.  She also has found that eye contact is essential to effective communication so she tries to stand near the path of pedestrians.

34.     Plaintiff Smith has peacefully prayed the Rosary at Allston-Brighton Planned Parenthood for the past 15 years.  When doing so he usually prays with others to make his message more effective.  Those praying the Rosary always have been peaceful and have never blocked or impeded pedestrians or clinic clients.   Prior to the Act's enactment Smith prayed the Rosary inside the zone.  Since the Act's adoption he has refrained from doing so.  Smith desires to pray inside the zone but fears arrest or citation if he does so.  In addition to prayer Smith displays a Crucifix.

35.     Plaintiff Farrell engages in expressive activities at Women's Health Service, 822 Boylston Street, Brookline.  On or about December 7, 2007, a zone was marked in a 35-foot radius around the driveways of the office building housing Women's

Health Service.  The zone encompasses the entire public sidewalk 35 feet from the outer edge of the driveways as well as most of Reservoir Road directly in front of the driveways.

36.     The marked zone at this location makes it impossible for Farrell to stand near the path of pedestrians or vehicles entering the driveways and entirely forecloses her ability to leaflet to unwilling and even willing recipients.  It also prevents her from speaking to clinic clients in a normal conversational tone.

37.     On December 27, 2007 Farrell called Lt. McDermott of the Brookline Police Department and pointedly asked whether she would be subject to arrest if she engaged in expressive activities inside the zone.  Lt. McDermott responded by saying, "You have ample room where you are.  I wouldn't push it if I were you."  Farrell understood Lt. McDermott's response as meaning she would be subject to arrest if she exercised First Amendment rights inside the marked zone.

38.     Plaintiff Cadin has been offering information and support at the Allston-Brighton Planned Parenthood for approximately 2-½ years.  He offers both men and women alternatives to abortion through oral communications and by distributing literature.  Prior to enactment of the Act, Cadin would often stand next to men or women who exited the facility to smoke cigarettes.  This area is now located within the zone.  Cadin's experience has been that his offers of help are effective when made in close proximity to the recipient, with a smile, and in a calm and gentle demeanor which tends to put both men and women at ease.

39.     On several occasions since the Act took effect Plaintiffs McCullen and Cadin were nearly struck by vehicles turning onto Alcorn Street from Commonwealth

Avenue as they attempted to communicate with clinic clients without transgressing the marked zone.

40.     Public sidewalks and streets in Massachusetts are used by third parties not before the Court (hereafter, "third parties") for non-abortion related peaceful speech or assembly activities such as labor picketing, anti-war and environmental demonstrations, labor organizing, hawking newspapers or magazines, soliciting charitable contributions, circulating petitions, panhandling, and spur-of-the-moment conversations with friends or acquaintances.   They also are used for such innocent non-speech activities as simple loitering, waiting for public or private transportation, smoking cigarettes, or simply strolling about without an intended destination.

41.     Massachusetts citizens have been using the public streets and sidewalks to debate political, social, and religious issues since well before the Founding of the United States.

42.     The Act prevents Plaintiffs and third parties from approaching both willing and unwilling listeners within the zone.

43.     The Act severely burdens Plaintiffs' and third parties' ability to win the attention of both willing and unwilling listeners and, consequently, from reaching the minds of their intended audience.   Some people may have difficulty reading signs or hearing clearly from 35 feet away or less.

44.     The Act prevents Plaintiffs and third parties from engaging in oral communications in a normal conversational tone with persons located in certain areas within the zone.

45.     The Act severely burdens Plaintiffs' and third parties' ability to distribute literature to willing recipients located in certain areas within the zone.

46.     The Act forecloses altogether Plaintiffs' and third parties' ability to distribute literature to unwilling recipients located in certain areas within the zone.

47.     The Act prevents Plaintiffs and third persons from standing within the zone near the path of oncoming pedestrians when proffering their material, thereby making it difficult for pedestrians to accept such material.

48.     The Act prevents Plaintiffs and third parties from approaching, in an inoffensive way, persons within the zone for the purpose of offering information with a view to influencing actions that may have an imminent and irreversible consequence.

49.     The Act prevents both willing and unwilling listeners from receiving certain oral communications, including pro-life communications, in a normal conversational tone.

50.     The Act prevents willing recipients from easily receiving certain types of literature, including pro-life literature, if they are in close proximity to clinic entrances, exits, and driveways.

51.     The Act prevents Plaintiffs and third parties from utilizing large portions of public sidewalks and streets adjacent to reproductive health care facilities for any purpose other than reaching a destination other than such facility.  Police do not permit Plaintiffs to use the zone even for this purpose.

52.     The Act by its terms exempts certain classes of individuals from its reach, including health care facility employees and agents, thereby granting them free, unrestricted, and unhindered access to the zone regardless of purpose.

53.     The Act by its terms exempts certain classes of individuals from its reach, including health care facility employees and agents, thereby permitting them to freely engage in all manner of expressive activity inside the zone.

54.     The Act creates public safety hazards by forcing Plaintiffs and third parties to stand or walk in portions of the public street occupied by vehicular traffic.

55.     The Act creates public safety hazards by decreasing the flow of traffic and creating congestion on those portions of public streets occupied by vehicular traffic.

56.     The size and location of the zone places a substantial burden on Plaintiffs' ability to orally communicate, leaflet, and display signs toward clinic clients and their companions.

57.     The size and location of the zone renders ineffective Plaintiffs' attempts to orally communicate, leaflet, and display signs toward their intended audience.

58.     The size and location of the zone virtually eliminates Plaintiffs' ability to leaflet.

59.     The legislative record is insufficient to support the draconian measures contained in the Act that severely infringe First Amendment rights and constitutionally protected liberty interests.

60.     Since the Act was adopted to date Plaintiffs desired to engage in distribution of literature, oral advocacy, and/or prayer on public streets and sidewalks located within a 35-foot radius of entrances, exits, and driveways of reproductive health care facilities but refrained from doing so out of fear they would have been arrested by police for violating the Act.

61.     Plaintiffs have a present and future desire and intend to engage in distribution of literature, oral advocacy, and/or prayer on public streets and sidewalks located within a 35-foot radius of entrances, exits, and driveways of reproductive health care facilities but will refrain from doing so out of fear they will be arrested by police for violating the Act.

62.     Plaintiffs have no plain, adequate, or complete remedy at law to redress the foregoing violations of their constitutional rights and liberty interests, and this suit for injunction and declaratory judgment is their only means of securing complete and adequate relief.   No other remedies would offer Plaintiffs substantial and complete protection from Defendant's unlawful laws, statutes, policies, and practices.

## V.     ALLEGATIONS OF LAW

63.     The Act alleged herein is enforced by Defendant under the color and pretense of the laws, statutes, and policies of the Commonwealth of Massachusetts.

64.     The loss of First Amendment freedoms for even minimal periods of time unquestionably constitutes irreparable injury.

65.     The public ways affected by the Act are quintessential public forums for expressive activities guaranteed by the First and Fourteenth Amendments to the United States Constitution.

66.     The right to engage in peaceful expressive activity, assembly, and association in quintessential public forums is guaranteed by the Free Speech and Assembly Clauses of the First and Fourteenth Amendments to the United States Constitution.

67.     The right to peacefully distribute literature in quintessential public forums is guaranteed by the Free Speech and Free Press Clauses of the First and Fourteenth Amendments to the United States Constitution.

68.     The right to engage in prayer, worship, and religious song in quintessential public forums is guaranteed by the Free Speech and Free Exercise Clauses of the First and Fourteenth Amendments to the United States Constitution.

69.     The fact that certain messages may be offensive to their recipients does not deprive them of constitutional protection.

70.     The right to receive information is guaranteed by the First and Fourteenth Amendments to the United States Constitution.

71.     The Act infringes the rights of willing recipients to receive literature and oral communications and therefore violates the First and Fourteenth Amendments to the United States Constitution.

72.     The right to travel and remain in the public place of one's choice is an aspect of personal liberty guaranteed by the Fourteenth Amendment to the United States Constitution.

73.     The right to loiter for innocent purposes on public ways is an aspect of personal liberty guaranteed by the Fourteenth Amendment to the United States Constitution.

74.     The Act chills and deters fundamental constitutional rights of Plaintiffs and third parties.

## FIRST CAUSE OF ACTION - 42 U.S.C. § 1983
### (Free Speech – Time, Place, Manner)

75.     Paragraphs 1 through 74 of the Complaint are incorporated herein by reference, same as though pleaded in full.

76.     Public streets and sidewalks are quintessential public forums for speech.

77.     The government's ability to restrict speech in public forums is very limited.

78.     The Act burdens substantially more speech than necessary to achieve a substantial and legitimate government interest.

79.     The Act is not a valid time, place, and manner regulation.

80.     The Act is not narrowly tailored

81.     The Act does not serve a significant governmental interest.

82.     The Act does not leave open ample alternative avenues of communication.

83.     The Act, on its face and as applied, is an unconstitutional abridgement of Plaintiffs' affirmative rights to free speech secured by the First and Fourteenth Amendments to the United States Constitution.

84.     The existence and enforcement of the Act chills and deprives Plaintiffs of their rights to free speech.   Plaintiffs are suffering irreparable harm to their First Amendment rights.

## SECOND CAUSE OF ACTION - 42 U.S.C. § 1983
### (Free Speech – Substantial Overbreadth)

85.     Paragraphs 1 through 74 of the Complaint are incorporated herein by reference, same as though pleaded in full.

86.     Public streets and sidewalks are quintessential public forums for speech.

87.     The very existence of the Act may cause others not before the Court to refrain from constitutionally protected speech or expression.

88.     The Act is an overly-broad restriction on speech because it sweeps within its ambit a substantial amount of constitutionally protected speech.

89.     The Act burdens substantially more speech than is necessary to achieve a substantial and legitimate government interest.

90.     The Act on its face is an unconstitutional abridgement of rights to free speech secured by the First and Fourteenth Amendments to the United States Constitution.

91.     The existence and enforcement of the Act chills and deprives Plaintiffs and third parties not before the Court of their rights to free speech.  Plaintiffs and third parties are suffering irreparable harm to their First Amendment rights.

### THIRD CAUSE OF ACTION - 42 U.S.C. § 1983
### (Free Speech – Prior Restraint)

92.     Paragraphs 1 through 74 of the Complaint are incorporated herein by reference, same as though pleaded in full.

93.     Public streets and sidewalks are quintessential public forums for speech.

94.     The government's ability to restrict speech in public forums is very limited.

95.     The Act completely bans Plaintiffs and third parties from engaging in any expressive activities within the zone.

96.     The Act forecloses Plaintiffs and third parties from orally communicating to persons within the zone from a normal conversational distance.

97.     The Act forecloses Plaintiffs and third parties from standing within the zone near the path of oncoming pedestrians and proffering their material.

98.     The Act effectively forecloses Plaintiffs' and third parties' ability to orally communicate with both willing and unwilling listeners located within the zone.

99.     The Act effectively forecloses Plaintiffs' and third parties' ability to distribute literature to both willing and unwilling recipients located within the zone.

100.     The Act severely burdens Plaintiffs' and third parties' ability to effectively display signs.

101.     The Act does not leave open ample alternative avenues of communication.

102.     The Act burdens substantially more speech than is necessary to achieve a substantial and legitimate government interest.

103.     The Act, on its face and as applied, is an unconstitutional abridgement of Plaintiffs' affirmative rights to be free from impermissible prior restraint in violation of the First and Fourteenth Amendments to the United States Constitution.

104.     The existence and enforcement of the Act chills and deprives Plaintiffs and third parties of their rights to free speech.  Plaintiffs and third parties are suffering irreparable harm to their First Amendment rights.

### FOURTH CAUSE OF ACTION - 42 U.S.C. § 1983
### (Free Speech – Free Association – Free Exercise Hybrid)

105.     Paragraphs 1 through 74 of the Complaint are incorporated herein, same as though pleaded in full.

106.     Public streets and sidewalks are quintessential public forums for speech.

107.   Peaceful expressive activities, including oral communications, literature distribution, and sign display, are rights guaranteed by the Free Speech and Press Clauses of the First and Fourteenth Amendments to the United States Constitution.

108.   Peaceful use of public streets and sidewalks for the purpose of seeking political, social, moral, or religious change is a right guaranteed by the Free Assembly Clause of the First and Fourteenth Amendments to the United States Constitution.

109.   Peaceful grouping of two or more persons for the purpose of enhancing communicative efforts, i.e., the right to associate, is guaranteed by First and Fourteenth Amendments to the United States Constitution.

110.   Peaceful public prayer, singing, and worship, and display of religious articles are rights guaranteed by the Free Exercise Clause of the First and Fourteenth Amendments to the United States Constitution.

111.   Infringement of the right to free exercise of religion exercised in combination of other fundamental constitutional rights subjects the Act to strict scrutiny review.

112.   The Act does not serve a compelling state interest nor is it the least restrictive means of achieving the State's asserted interest.

113.   The existence and enforcement of the Act chills and deprives Plaintiffs of their rights to free speech, free press, free assembly, and free exercise of religion. Plaintiffs are suffering irreparable harm to their First Amendment rights.

**FIFTH CAUSE OF ACTION - 42 U.S.C. § 1983**
**(Free Speech –Viewpoint Discrimination)**

114.   Paragraphs 1 through 74 of the Complaint are incorporated herein by reference, same as though pleaded in full.

115.    The Act is a content-based restriction on speech.

116.    The Act does not serve a compelling state interest.

117.    The Act is not the least restrictive means of achieving the State's asserted interest.

118.    The Act, on its face and as applied, is an unconstitutional abridgement of Plaintiffs' affirmative rights to free speech secured by the First and Fourteenth Amendments to the United States Constitution.

119.    The existence and enforcement of the Act chills and deprives Plaintiffs and third parties of their rights to free speech.  Plaintiffs and third parties are suffering irreparable harm to their First Amendment rights.

## SIXTH CAUSE OF ACTION - 42 U.S.C. § 1983
### (Due Process - Vagueness)

120.    Paragraphs 1 through 74 of the Complaint are incorporated herein by reference, same as though pleaded in full.

121.    Public streets and sidewalks are quintessential public forums for speech.

122.    Public streets and sidewalks are held in the public trust for use by all law-abiding citizens.

123.    The Act excludes from its reach "persons using the public sidewalk or street right-of-way adjacent to such facility solely for the purpose of reaching a destination other than such facility."

124.    The Act does not give fair notice to citizens.

125.    The Act does not provide minimal standards to guide law enforcement.

126.    Whether a person is using a public sidewalk "solely" for the purpose of reaching a destination other than a reproductive health care facility cannot be known by a law enforcement officer.

127.    Because a police officer cannot know with certainty whether a person is using a public sidewalk or street "solely" for the purpose of reaching a destination other than a reproductive health care facility, the Act necessarily entrusts lawmaking to the moment-to-moment judgment of the policeman on his beat.

128.    Because a police officer cannot know with certainty whether a person is using a public sidewalk or street "solely" for the purpose of reaching a destination other than a reproductive health care facility, the Act authorizes and encourages arbitrary and discriminatory enforcement.

129.    The Act is impermissibly vague because it fails to establish standards for the police that are sufficient to guard against the arbitrary and discriminatory suppression of First Amendment rights.

130.    The Act is impermissibly vague because it fails to establish standards for the police that are sufficient to guard against arbitrary deprivation of liberty interests.

131.    The Act, on its face and as applied, is an unconstitutional abridgement of Plaintiffs' and third parties' affirmative rights in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

### SEVENTH CAUSE OF ACTION - 42 U.S.C. § 1983
### (Due Process – Liberty Interest)

132.    Paragraphs 1 through 74 of the Complaint are incorporated herein by reference, same as though pleaded in full.

133.     Public streets and sidewalks are held in the public trust for use by all law-abiding citizens.

134.     The right of an individual to remain in the public place of his choice is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

135.     The freedom to loiter for innocent purposes is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

136.     The Act denies Plaintiffs and third persons their liberty interests in the use of public streets and sidewalks for innocent purposes and their rights to intrastate travel in violation of the Fourteenth Amendment to the United States Constitution.

137.     The Act, on its face and as applied, is an unconstitutional abridgement of Plaintiffs' and third parties' liberty interests in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## EIGHTH CAUSE OF ACTION - 42 U.S.C. § 1983
### (Equal Protection)

138.     Paragraphs 1 through 74 of the Complaint are incorporated herein by reference, same as though pleaded in full.

139.     Public streets and sidewalks are quintessential public forums for the exercise of constitutionally protected expressive activities and certain liberty interests.

140.     The right of an individual to remain in the public place of his choice is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

141.    The Act prohibits most citizens from accessing the zone for all purposes other than to reach a destination other than the reproductive health care facility located within it.

142.    The Act, by its express terms, exempts from its reach certain defined classes of persons thereby permitting them to freely engage in all manner of expressive activity and liberty interests pertaining to the public ways.

143.    With respect to the exercise of expressive activity and liberty interests, Plaintiffs and third parties are similarly-situated to exempted classifications yet treated in a dissimilar manner.

144.    The Act impinges fundamental rights and liberty interests and therefore is subject to strict scrutiny review.

145.    The Commonwealth cannot demonstrate a compelling interest for the differing classifications nor is the Act the least restrictive means of achieving its asserted interest.

146.    The Act, on its face and as applied, is an unconstitutional abridgement of Plaintiffs' and third parties' rights to equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that the Court:

a.    Assume jurisdiction over this action;

b.    Declare that Mass. Gen. L. chapter 266: Section 120E1/2(b) is unconstitutional on its face;

c.      Declare that Mass. Gen. L. chapter 266: Section 120E1/2(b) is unconstitutional as applied to Plaintiffs' expressive activities at Allston-Brighton Planned Parenthood and Women's Health Service;

d.      Enter preliminary and permanent injunctions enjoining Defendant from enforcing Mass. Gen. L. chapter 266: Section 120E1/2(b);

e.      Award Plaintiffs their costs of litigation, including reasonable attorneys' fees and expenses, pursuant to 42 U.S.C. § 1988; and

f.      Grant such other and further relief as the Court deems necessary and proper.

FOR THE PLAINTIFFS

/s/ Philip D. Moran
Philip D. Moran, MA Bar # 353920
Philip D. Moran P.C.
265 Essex Street, Suite 202
Salem, Massachusetts 01970
Tel: (978) 745-6085
Fax: (978) 741-2572
Email: philipmoranesq@aol.com

/s/ Michael J. DePrimo
Michael J. DePrimo, CT Bar # 402211
Pending admission *pro hac vice*
Attorney at Law
778 Choate Avenue
Hamden, Connecticut 06518
Tel:  (203) 281-1496
Fax: (203) 281-1496
Email: michaeldeprimo@gmail.com

Benjamin W. Bull, AZ Bar # 009940
Pending admission *pro hac vice*
Alliance Defense Fund
15100 N. 90th Street
Scottsdale, Arizona 85260
Tel: (480) 444-0020
Fax: (480) 444-0028
Email: bbull@telladf.org

Kevin H. Theriot, KS Bar # 21565
Pending admission *pro hac vice*
Alliance Defense Fund
15192 Rosewood
Leawood, Kansas 66224
Tel: (913) 685-8000
Fax: (913) 685-8001
Email: ktheriot@telladf.org

Timothy D. Chandler, CA Bar # 234325
Pending admission *pro hac vice*
Alliance Defense Fund
101 Parkshore Drive, Suite 100
Folsom, California 95630
Tel: (916) 932-2850
Fax: (916) 932-2851
Email: tchandler@telladf.org