Exhibit 3



*The Commonwealth of Massachusetts*

HOUSE OF REPRESENTATIVES
STATE HOUSE, BOSTON 02133-1054

**RACHEL KAPRIELIAN**
**REPRESENTATIVE**
29TH MIDDLESEX DISTRICT
(WATERTOWN, CAMBRIDGE W9)
TEL. (617) 926-5171

———

ROOM 479, STATE HOUSE
TEL. (617) 722-2520
Rep.RachelKaprielian@state.ma.us

Assistant Majority Whip
Floor Division Leader

Representative Michael A. Costello, Chair
Senator Jarrett T. Barrios, Chair
Joint Committee on Public Safety and Homeland Security
State House, Room 167
Boston, MA 02133

May 14, 2007

Dear Chairman Costello and Chairman Barrios:

I am writing to respectfully request your support of S1353, legislation relative to access to reproductive health centers which is scheduled to be heard by the Joint Committee on Public Safety and Homeland Security on Wednesday, May 16, 2007.

As you know, this legislation seeks to establish a fixed 35-foot buffer zone surrounding entrances and driveways of reproductive health facilities in the Commonwealth of Massachusetts. The state law as it currently stands has bee difficult to enforce and has not adequately protected public safety outside reproductive health centers. S1353, if passed into law would address this issue and provide much needed improved public safety.

It is my hope that the Joint Committee on Public Safety and Homeland Security will favorably report S1353 so that it may timely proceed through the legislative process. Thank you for your consideration of this important piece of legislation.

Sincerely,

Rachel Kaprielian
State Representative

COMMONWEALTH OF MASSACHUSETTS

# MASSACHUSETTS SENATE

STATE HOUSE, BOSTON 02133-1053

**SENATOR BENJAMIN B. DOWNING**
BERKSHIRE, HAMPSHIRE & FRANKLIN DISTRICT
STATE HOUSE, ROOM 413-F
TEL. (617) 722-1625
FAX (617) 722-1523

———————————

20 BANK ROW, SUITE 202
PITTSFIELD, MA 01201
TEL. (413) 442-4008
FAX (413) 442-4077

COMMITTEES:
PUBLIC SERVICE (CHAIR)
BILLS IN THE THIRD READING (VICE CHAIR)
FINANCIAL SERVICES
VETERANS & FEDERAL AFFAIRS
CONSUMER PROTECTION & PROFESSIONAL LICENSURE
POST AUDIT & OVERSIGHT

May 15, 2007

The Honorable Jarrett T. Barrios, Chair
The Honorable Michael A. Costello, Chair
Joint Committee on Public Safety and Homeland Security
State House, Room 167
Boston, MA 02133

Dear Chairman Barrios and Chairman Costello: *Mike*

     I am writing to express my strong support for S. 1353, "*An Act Relative to Public Safety*," filed by Senator Barrios. As a co-sponsor of this legislation, I urge the Committee to report this bill out favorably.

     This legislation will create a 35-foot "buffer zone" surrounding the entrances and driveways of all reproductive health facilities in the state. The current 18 foot zone is complex and nearly impossible to enforce due to the vagueness of the law's language. This bill's 35-foot buffer zone at facility entrances and driveways keeps anyone out unless they are a patient or staff entering or leaving, law enforcement or people using the sidewalk or street to get to another destination.

     Over the last year, the Commonwealth took unprecedented steps to become the state leader in health care access to all. Access to health care should include safe access to the medical provider.

     Once again, thank you for the opportunity to express my support for this important legislation. If I can be of further assistance please do not hesitate to contact me at (617) 722-1625.

Sincerely,

**BENJAMIN B. DOWNING,** *Chair*
*Senate Committee on Public Service*
*Berkshire, Hampshire & Franklin District*

BBD/em


# Planned Parenthood®
## League of Massachusetts

Board of Directors
2006-2007

Janina A. Longtine, M.D.,
*Board Chair*

Sarita Bhalotra, M.D., Ph.D.
*Vice Chair*

Bill Stephenson
*Treasurer*

Jennifer Hawkins
*Clerk*

Emily Amick
David Bechhofer
Diane R. Blake, M.D.
Joan E. Braderman
Lula Christopher
Dharma E. Cortés, Ph.D.
Rev. Kim K. Crawford Harvie
Brit Jepson d'Arbeloff
Pat Deutch
Susan Dickler
Kim Druker Stockwell
Carolyn Erskine
E. Marla Felcher, Ph.D.
Elmer R. Freeman
Heather Fukunaga
Jonathan P. Gertler, M.D.
Ilene Greenberg
Susan Haas, M.D., MSc.
John Henn, Esq.
Elizabeth Lowrey Clapp
Ingrid Mach
Cara McCarthy Hutchins
Jamie Ann Sabino, Esq.
Diane Schmalensee
Suzie Tapson
Charles A. Welch, M.D.
Susan Whitehead
Pace Woods Wilson
R. Lyman Wood
Jeffrey Zegas
Matthew Oppenheimer
*ex officio*

Dianne Luby
*President and CEO*

Headquarters:
1055 Commonwealth Avenue
Boston, MA 02215-1001
Phone: (617) 616-1660
Fax: (617) 616-1665

www.pplm.org

May 23, 2007

State Representative Michael Costello
Room 167
State House
Boston, MA 02133

Dear Representative Costello:

On behalf of all of us at PPLM, thank you so much for your supportive comments at last week's hearing on the Buffer Zones Bill. You really helped to reinforce the message that this legislation is a necessary and reasonable public safety measure that will strike a proper balance between the right to free speech and the right of patients to access healthcare without fear of violence, intimidation or harassment. We know you have a very busy schedule, so we are very appreciative of your participation in those proceedings.

We were so proud to be at the State House that day. For anyone who attended the hearing, it is not an experience that they will soon forget. The committee heard so many powerful arguments in support of the bill from so many perspectives, the message could not have been any clearer: Women seeking health services, and the people who provide those services, should be able to do so in an environment that is supportive of their privacy, dignity and safety.

Last week's hearing was a dramatic testimony to the importance of that need, and that is due to the terrific advocacy of people like you. We truly appreciate your active leadership on this issue which is so important to women across the Commonwealth. We look forward to continuing working with you to pass this important bill.

Sincerely,

Dianne Luby
President/CEO

Angus McQuilken
Vice President for Public Relations and Governmental Affairs

*Thank you so much for your leadership on this!*

*-Angus*

COMMONWEALTH OF MASSACHUSETTS

# MASSACHUSETTS SENATE

STATE HOUSE, BOSTON 02133-1053

**SENATOR PAMELA P. RESOR**
MIDDLESEX AND WORCESTER
DISTRICT
ROOM 410
TEL. (617) 722-1120
FAX. (617) 722-1089

DISTRICT OFFICE:
P.O. BOX 1110
MARLBOROUGH, MA 01752
TEL. (508) 786-3040
FAX. (508) 786-1969

COMMITTEES:
ENVIRONMENT, NATURAL RESOURCES
AND AGRICULTURE (CHAIR)
WAYS AND MEANS
LABOR AND WORKFORCE DEVELOPMENT, (VICE-CHAIR)
EDUCATION
CHILDREN & FAMILIES
TOURISM, ARTS AND CULTURAL DEVELOPMENT

May 29, 2007

Representative Michael A. Costello, House Chair
Joint Committee on Public Safety and Homeland Security
State House, Room 167

Dear Chairman Costello,

Please accept this testimony in support of Senate Bill 1353: An Act Relative to Public Safety.

This bill would more effectively protect persons entering or exiting reproductive health care facilities by establishing a fixed 35-foot buffer zone surrounding the facility and its entrances, parking areas, and driveways. Women seeking health services and the individuals who provide those services should be able to do so without fear of violence, harassment or intimidation. This strengthened and clarified buffer zone law is needed to ensure the privacy, dignity and safety of individuals in need of medical care and consultation.

I hope you will join me in supporting the Buffer Zone Bill by giving it a favorable report. Thank you in advance for your consideration of this important legislation.

Sincerely,

**PAMELA P. RESOR**
*State Senator*
*Middlesex & Worcester*

Printed on Recycled Paper



*The Commonwealth of Massachusetts*

HOUSE OF REPRESENTATIVES
STATE HOUSE, BOSTON 02133-1054

**FRANK I. SMIZIK**
15TH NORFOLK DISTRICT
ROOM 473F, STATE HOUSE
TEL. (617) 722-2210
FAX (617) 722-2239

CHAIRMAN
Committee on:
Environment, Natural Resources and Agriculture

Written Testimony of Representative Frank I. Smizik
Before the Joint Committee on Public Safety
In Support of Senate Bill 1353
An Act Relative to ~~Access to Reproductive Health Centers~~ Public Safety.

May 16, 2007

**What is the Problem:**

Women who want to gain access to women's health clinics for whatever reasons are jostled, have literature shoved at them, and/or receive an onslaught of comments from demonstrators outside of these clinics. At the present time there is an eighteen foot "floating buffer zone" between the demonstrators and the patients. Six feet is not enough. Why should anyone seeking healthcare have any interference whatsoever? Both patients and employees of the clinics are subject to the same interference. The law is vague and difficult to enforce against those who are guilty of harassment.

**What this bill does:**

~~What this bill does is~~ provides a 35' fixed buffer zone that would make it illegal to protest within these defined boundaries.

**Why is this bill important:**

This bill is essential to ensuring health care facilities are accessible and that those who need access can gain it. Patients should not be harassed, intimidated or fear violence as they seek medical care. As the Representative of Brookline, I watched the news years ago in horror as John Salvi walked into Planned Parenthood in our town and shot the receptionist. There are others like John Salvi out on the street. Their faith and their desire to oppose abortion

Printed on Recycled Paper

knows no bounds. Free speech must be protected, but so ~~does~~ must should access to health care. We would be up in arms if people interfered with a cancer patient going to get radiation for breast cancer or a disabled person seeking medical help for his/her disability. Interference with privacy and the right to health care have no place in a civilized society. This bill does not prohibit demonstrators, but certainly it removes some of the fear and difficulty in seeking medical help.

For these reasons I urge this committee ~~given~~ to give this bill a favorable report.



**Women's Bar Association**
18 Tremont St., Suite 730
Boston, MA 02108
Ph: 617.973.6666  Fax: 617.973.6663
www.womensbar.org

**President**
Julia Huston

**President-Elect**
Kathy Jo Cook

**Vice President, Statewide Outreach & Membership**
Michelle Peirce

**Vice President, Operations**
Kerry Florio Labovitz

**Treasurer**
Andrea Kramer

**Secretary**
Rebecca Pontikes

**Board of Directors**
Stefanie Balandis
Beverly Coles-Roby
Nancy Cremins
Kara DelTufo
Deborah DosSantos
Leigh-Ann Durant
Karen Erickson
Darien K.S. Fleming
Andrea Goldman
Ann Morse Hartner
Viki Kalaitzidis
Marianne C. LeBlanc
Lurleen Manning
Kathleen O'Connor
Jamie Ann Sabino
Jennifer Saubermann
Elizabeth Wilson
Kimberly Winter
Barbara Zimbel

**Past Presidents**
Pamela E. Berman
Hon. Patricia E. Bernstein
Beth I.Z. Boland
Lisa Brodeur-McGan
Martha Coakley
Hon. Judith Nelson Dilday
Leigh-Ann Durant
Elaine Epstein
Hon. Wendie Gershengorn
Sally J. Greenberg
Ellen C. Kearns
Karen J. Kepler
Marianne C. LeBlanc
Antoinette E.M. Leoney
S. Beville May
Sarah McClean
Melinda Milberg
Kathleen O'Connor
Maureen M. Phillips
Patricia Rapinchuk
Mary K. Ryan
Jamie Ann Sabino
Terry Jean Seligmann
Jane E. Sender
Sandra Shapiro
Jane Tewksbury
Gretchen Van Ness
Sarah Wald

**Executive Director**
Elisabeth J. Medvedow

**Membership & Programming Specialist**
Marianne Spencer

**Communications Manager**
Bridget Ryan Snell

**Office Administrator**
Christina Maryland

May 10, 2007

Senator Jarrett T. Barrios
Senate Chair, Joint Committee on Public Safety and Homeland Security
Room 309
State House
Boston, MA 02133

Representative Michael A. Costello
House Chair, Joint Committee on Public Safety and Homeland Security
Room 167
State House
Boston, MA 02133

In support of SB1353, An Act Relative to Public Safety

Dear Senator Barrios, Representative Costello and Members of the Committee:

We are writing on behalf of the Women's Bar Association of Massachusetts (WBA) to urge favorable action on Senate Bill 1353.  The WBA is a professional association of women attorneys and judges, with over 1,300 members across the Commonwealth.  The WBA has a long-standing commitment to protect women's rights and freedom of choice; therefore, we understand the importance of having a clear and unambiguous buffer zone to protect patients and employees entering reproductive health facilities.

The current Massachusetts Buffer Zone Law is flawed due to its vague consent language and its complexity.  Though the current law establishes an eighteen-foot buffer zone outside of reproductive facilities, protesters can be within that zone as long as they are not within six feet of someone entering the facility.  This six-foot exception eviscerates the eighteen-foot requirement.  Furthermore, if protesters have a patient or employee's consent then they are allowed within six feet of the person.  Even though Planned Parenthood League of Massachusetts received 46 written reports of buffer zone violations last year, the current legislation has proven impossible to enforce.  Only one prosecution has been considered by the courts and it was ultimately thrown out by the court due to the vagueness of the statute.  Therefore, for the public safety of the Commonwealth's citizens, new buffer zone legislation is needed.

There is a clear and compelling need to increase the current buffer zone to protect patients' rights and their safety.  For example, there have been incidences of protesters dressing up as Boston Police officers, having Boston Police Department hats, shirts and clipboards, and asking for patients' names and contact information.  Patients and employees have been touched by protesters, blocked access to the front door and garage, photographed and filmed in their cars, screamed at within the buffer zone and have had unsolicited literature

thrown into their cars. Therefore, the current buffer zone is inadequate.

This bill addresses flaws in the current legislation and would establish a fixed 35-foot buffer zone surrounding the entrances and driveways of all reproductive health facilities in the state. The bill is content-neutral and narrowly tailored to serve legitimate and substantial government interests. No one will be allowed to stand inside the 35-foot radius except: people entering or leaving the clinic, law enforcement and other public service employees acting within the scope of their employment and people using the public sidewalk or street right-of-way to get to another destination. Protesters would still be allowed to protest and assemble outside of the 35-foot buffer zone.

The Massachusetts Supreme Judicial Court reviewed an earlier proposal for a fixed, twenty-five foot buffer zone, and found it to be constitutional. See Opinion of the Justices to the Senate, 430 Mass. 1203 (2000). In addition, courts across the country have upheld buffer zone laws as reasonable and constitutionally permissible.

For these reasons, the WBA strongly urges you to support SB 1353 and to give it a favorable report.


Sincerely,

Kristin W. Shirahama
Legislative Policy Committee


Ann Morse Hartner
Co-chair, Legislative Policy Committee and Board Member



COMMONWEALTH OF MASSACHUSETTS

# MASSACHUSETTS SENATE

STATE HOUSE, BOSTON 02133-1053

**SENATOR EDWARD M. AUGUSTUS, JR.**
SECOND WORCESTER DISTRICT
Room 413B, STATE HOUSE
TEL. (617) 722-1485
FAX (617) 722-1066
E-Mail: Edward.Augustus@state.ma.us

COMMITTEES:
ELECTION LAWS (CHAIR)
EDUCATION (VICE CHAIR)
WAYS AND MEANS
LABOR AND WORKFORCE DEVELOPMENT
VETERANS AND FEDERAL AFFAIRS (VICE CHAIR)

May 15, 2007

Chairman Jarrett T. Barrios
Joint Committee on Public Safety
Room 309
Boston, MA 02133

Chairman Michael A. Costello
Joint Committee on Public Safety
Room 167
Boston, MA 02133

Dear Chairman Barrios, Chairman Costello and Members of the Joint Committee on
Public Safety:

As the Committee considers ***Senate Bill 1353: An Act Relative to Public Safety***, I
would like to state my strong support for this vital legislation, of which I am a proud co-
sponsor.

Currently, the Massachusetts Buffer Zone Law establishes an 18-foot buffer zone
outside of health facilities. However, protesters can be within that zone, as long as they
are not within six feet of an entering patient, and can be within that six-foot "bubble"
zone if they have the entering patient's consent.  Senate Bill 1353 will prohibit
individuals from protesting within a 35-foot radius of the entrances and driveways of all
reproductive health facilities in the state. Massachusetts is fortunate to already have a
buffer zone statute in place, but the current law has been nearly impossible to enforce due
to its complexity, and the vagueness of the language surrounding consent.

Within the last four years, Planned Parenthood of Massachusetts has increasingly
received numerous complaints about buffer zone violations.  Those violations range from
protestors physically touching patients and blocking access to the front door to
photographing and filming into patients' and employees' cars. More serious violations
include protestors dressing up as Boston police officers and asking for patients' names
and contact information.  This behavior is unacceptable for women who are exercising
their legal reproductive rights and choices.  I am proud to support legislation that will
strengthen the buffer zone law to better protect the safety, privacy and dignity of women
entering reproductive health facilities.

If implemented properly, Senate Bill 1353 will promise an enhanced degree of security to all of the women in Massachusetts without compromising the constitutional rights of others, such as freedom of speech and freedom of assembly.  We should not hide behind the First Amendment while innocent patients and employees are being verbally and physically harassed at clinics across the Commonwealth.  This truly is a matter relative to public safety.  With the introduction of S. 1353, I believe that the citizens of the Commonwealth will have a fair opportunity to exercise their entitled rights, whether it is their reproductive rights or First Amendment rights.

Again, I would like to offer my full support for this much-needed effort and I hope the committee will act favorably on Senate Bill 1353.  Thank you.

Sincerely,

Edward M. Augustus, Jr.
State Senator

Testimony of Wendy Kaminer on behalf of the Defending Dissent
Foundation (formerly the First Amendment Foundation)

*SB 1353*

May 16, 2007

---

The Defending Dissent Foundation is a civil liberties group dedicated to protecting the right to protest and dissent from government interference. Formerly known as the First Amendment Foundation, Defending Dissent has its roots in the National Committee to Abolish HUAC, formed in 1960.  It works with people and groups whose speech rights are threatened by government action, regardless of their politics or ideologies.  Defending Dissent has no position on reproductive choice, though I think you'd find strong pro-choice sentiment among its supporters.  What brings me here today on behalf of Defending Dissent is dismay about the effect of this bill on free speech.

I appreciate the desire to alleviate harassment of patients and personnel at abortion clinics, but the proposed 35 foot buffer zone wouldn't simply regulate or attempt to regulate harassment; it would outlaw political speech.  The case against the bill is simple: it would impose a prior restraint on speech, prohibiting peaceful, even silent protests within 35 feet of clinic entrances and driveways – where the protests might be most effective.  It would also effectively impose different restrictions on protesters at different clinics, given their different physical configurations.

This is a overly simple solution to a complicated problem – the reported difficulties of enforcing the current law and the tendency of some protesters to engage not just in protests but in harassment of individuals patients and providers.  But laws restricting speech should be difficult to enforce; if drawn with respect for the First Amendment and prohibitions on prior restraints, they are, by nature difficult to enforce.  Obscenity laws, for example, are difficult to enforce, to the dismay of some and the delight of others.  It would be easier to punish obscenity if we simply drew a bright line or created a sort of buffer zone around discussions of sex.   It's easy to police harassment of delegates to a political convention when we restrict protesters to designated "free speech" zones,

1

Case 1:08-cv-10080-GAO  Document 9-6  Filed 01/16/08  Page 13 of 23
be so easy to restrict political speech.

I understand the anger at protesters who abuse their rights. I understand the impulse to protect patients and clinicians from being intimidated or upset as well as criminally harassed. But protecting people from intimidation or emotional turmoil is no justification for restricting speech. We don't have a right not to be upset, even when seeking medical care. We do have a right to protest state sanctioned medical procedures. Imagine how vigorously pro-choice supporters would protest outside clinics that engaged in mandatory sterilization, if it were legally permissible, as it was once, in the early 20th century. Would you pass a law to restrict those protests, even if clinicians felt intimidated or upset by them?

Protesters sometime abuse their rights to speak, of course; virtually all rights are bound to be abused on occasion, just as legislative power is bound to be abused – sometimes with the best intentions. Please don't let abuses of rights by some individuals persuade you to deny those rights to all.

Finally, this bill is, at the very least, arguably unconstitutional. The U.S. Supreme Court has upheld buffer zones around clinic entrances, so long as they did *not* include categorical prohibitions on all protests within the zone  -- the sort of prohibition included in this bill. In 2000, when the Court upheld a Colorado statute imposing a 100 foot buffer zone around clinic entrances, it stressed that the law "allows a protester to stand still while a person moving towards or away from a health care facility walks past her." The law only prohibited "knowingly approaching" within 8 feet of another person without consent.

But even if the Supreme Court were to uphold this law, we would still oppose it. Like NARAL, Planned Parenthood, and other pro-choice groups, the Defending Dissent Foundation believes that the Supreme Court sometimes gets it wrong in enabling legislatures to restrict rights. The Court allowed significant restrictions on First Amendment rights in the Colorado buffer zone case, but it did not allow the blanket prohibition on speech included in this bill. It would be a sad day for civil liberty if the Massachusetts legislature became less protective of individual rights than the U.S. Supreme Court.

**Testimony on legislation to establish a 35-foot fixed buffer zone outside entrances to reproductive health care facilities to prevent violence and harassment of patients and staff.**

By Ann  S.  Murphy, President, Massachusetts Women's Political Caucus
May 16, 2007

Mass. Women's Political Caucus is a 36-yeard old, multi-partisan organization dedicated to promoting the participation and involvement of women in the political process.

The Caucus supports initiatives that promote the health and wellbeing of women. Ensuring access to women's health care is a primary concern to our organization.  As such, we are proud to stand here with elected officials, members of the medical and legal community and coalition partners to support the bill.

Women seeking health services and the people who provide those services should be able to do so without fear of violence, harassment or intimidation.  When a clinic is the target of persistent harassment, buffer zones are critical to keeping clinics open and protecting patients and staff.  The current buffer zone is vague and hard to enforce.  A strengthened buffer zone law is needed to ensure the privacy, dignity and safety of women seeking health care that they have a right to under Massachusetts laws and the U.S. Supreme Court.



# MCFL

## Massachusetts Citizens For Life, Inc.

**To:** Joint Committee on Public Safety & Homeland Security
**From:** Marie Sturgis, Executive Director
**Re:** S.1353 Creating A Fixed Buffer Zone At Abortion Clinics
**Date:** May 16, 2007

Mr. Chairman and Members of the Joint Committee, thank you for the opportunity to speak to you today. My name is Marie Sturgis. I am the Executive Director of Massachusetts Citizens for Life (MCFL). MCFL is the largest pro-life organization in the state of Massachusetts with over 35 chapters in cities and towns throughout the Commonwealth and is the state affiliate of the National Right to Life Committee.

Massachusetts Citizens for Life would like to record its strong opposition to Senate bill - 1353 Legislation "Creating A Fixed Buffer Zone At Abortion Clinics"

This legislation will substantially increase the size of the present area to a 35-foot "buffer zone". Pro-life people peacefully pray and attempt to give women contemplating an abortion vital information before they go into the clinic. This effort is the final bastion of hope to save the helpless child, who is slated for death inside her mother's body.

Massachusetts Citizens for Life does not promote or encourage violent or illegal activity in response to the daily acts of violence occurring inside Massachusetts abortion clinics. MCFL, and many of the individuals testifying before you today represent the pro-life movement, and the belief that ALL human life is sacred, including unborn children who deserve protection under the law.

There is no need for the legislature to enact further legislation that would substantially increase the size of the existing "buffer zones". These areas are in front of every abortion clinic in the Commonwealth. Present laws oversee the public safety and the rights of individuals are adequately protected. There is no further need to single out pro-life people at clinics, many of which are women, who believe that unborn children are entitled to full protection under the law.

I would ask why there is a need to increase the size of the buffer zone when the only ideas that can be expressed within the restricted area are pro-abortion viewpoints. The only verbal communication tolerated (unless a woman indicates otherwise) for the most part within the restricted area is made by people at the clinic to have an abortion or communication made by the employees of the abortion clinic.

Whatever legitimate interest the government has for creating buffer zones, the zone should be content neutral, without any legal pandering to one side or the other. This legislation places additional severe restrictions on the ability of pro-life people to provide important information to pregnant women, who are in crisis, on the right to life issue. To increase the size of the existing area without substantial reason would be an action that demonstrates unquestionable bias and clashes with First Amendment Rights.

WRITTEN TESTIMONY SUBMITTED TO THE JOINT COMMITTEE ON
PUBLIC SAFETY & HOMELAND SECURITY,
ON MAY 16, 2007,
BY MELISSA CONROY,
PATIENT ADVOCATE OF FOUR WOMEN CLINIC

Chairman Barrios, Chairman Costello, and members of the Public Safety & Homeland
Security Committee: Thank you for giving me the opportunity to submit this written
testimony.  My name is Melissa Conroy, and I am a Patient Advocate at Four Women, a
reproductive health clinic in Attleboro.

I wish to go on record as supporting An Act Relative to Public Safety (S.1353),
commonly known as the "Buffer Zone Bill."

**Please give a favorable report to An Act Relative to Public Safety (S.1353).**

The Buffer Zone Law of 2000 was passed in order to ensure safe passage to those
entering or exiting a reproductive health facility.  Unfortunately, the vague language in
the law has made it very difficult to enforce.  The establishment of a 35 foot buffer zone
would eliminate the loose interpretation which effectively nullifies the current law.

Anti-abortion protesters not only impede access to clinic doors, but also create safety
issues for the general public trying to use the sidewalks, streets or driveways. Obstructing
the flow of traffic (both pedestrian and motor vehicle) can result in injury and property
damage.

At Four Women, protesters walk back and forth across the entrance of the driveway,
which is approximately 100 feet long.  Though prohibited from standing in the entrance
of the driveway, they frequently stop there until threatened with police action.  There
have been instances of picketers either slowing or speeding up to narrowly avoid being
hit by cars driven by staff.  Patients have reported feeling too intimidated by the pacing
protesters to enter the property, and turning back.

Our clinic is located in a medical office park with several other facilities adjacent to our
building.  Patients and staff of these other offices complain of having to cross this line of
protesters.  The parked cars and large signs of protesters have obstructed the views of
motorists, resulting in accidents.  A 35 foot buffer zone will prevent disruptions in the
entrance of the driveway and the street on either side.  Consequently, our patients and
staff will feel safer, and relations with the other offices and neighboring residences will
improve.

The proposed amendment to the buffer zone law is crucial to women's access to
reproductive healthcare, and to the safety of providers.  The ambiguity of the existing law
is resolved by the clear limitations set by this legislation.



**CATHOLIC ACTION LEAGUE of Massachusetts**
35 MONTCLAIR AVENUE • BOSTON, MASSACHUSETTS 02131

TEL. (617) 524-6309
FAX (617) 524-0461

16 May 2007

## TO THE JOINT COMMITTEE
## ON PUBLIC SAFETY AND HOMELAND SECURITY

My name is C. J. Doyle, and I am the Executive Director of the Catholic Action League of Massachusetts.

The Catholic Action League wishes to be recorded in opposition to Senate Bill 1353, AN ACT RELATIVE TO PUBLIC SAFETY.

The proposed expansion of existing buffer zone legislation represents yet another effort to impose a content based restriction on freedom of speech, and to impair other constitutionally protected First Amendment activity such as freedom of religion and freedom of assembly. Buffer zones do nothing to promote public safety or enhance physical security at abortion clinics, and everything to penalize law-abiding citizens practicing non-violent opposition to abortion, including those engaged in peaceful prayer on public sidewalks.

The principle beneficiaries of this proposed legislation will be abortion facilities and those doctors who perform abortions, whose incomes will be assured by isolating their patients from any influence which may discourage them from going through with the procedure. By attempting to choke off sidewalk counseling, women's choices are being narrowed, and a mockery is being made of the notion of informed consent.

The original buffer zone law was a chilling assault on civil liberty and religious freedom. That lawmakers would actually contemplate expanding this radical measure is a frightening example of an extremist ideology which would sacrifice, for the sake of its own agenda, long established rights and protections found in both the United States and Massachusetts Constitutions. This is deplorable public policy.

I urge the committee to reject this fundamentally flawed legislation.



# Suffolk County Sheriff's Department



ANDREA J. CABRAL
SHERIFF

Jail
200 Nashua Street
Boston, MA 02114
(617) 635-1100

House of Correction
20 Bradston Street
Boston, MA 02118
(617) 635-1000

The Honorable Jarrett T. Barrios, Co-Chairman
The Honorable Michael A. Costello, Co-Chairman
Joint Committee on Public Safety and Homeland Security
State House, Room 40
Boston, Massachusetts 02133

May 17, 2007

Dear Chairmen Barrios and Costello and Honorable Members of the Committee:

I write to express my support of S1353, as drafted, filed by Senators Barrios and Montigny, Representatives Sciortino, Jr., and Allen and other members of the General Court.

Current so-called "buffer zone" laws had their genesis in an injunction issued by Superior Court Justice Peter Lauriat over 15 years ago. As an Assistant Attorney General in the Civil Rights Division of the Attorney General's Office, I prosecuted a number of cases, in several jurisdictions throughout Massachusetts, involving violations of that injunction by well organized defendants. Acts of harassment, intimidation, assault, and battery were then and continue to this day to be the *modus operandi* of too many anti-choice protesters.

Beyond the traumatic impact of such behavior on individual clinic employees and patients who are targeted, this conduct frequently poses a larger risk to public safety, particularly when the protest involves the use of tools or other implements designed to thwart efforts at dispersing protesters who resort to illegal means. Cities and towns incur considerable expense responding to such protests and sometimes must divert resources from other important law enforcement needs.

S1353 is a balanced bill that protects the legitimate exercise of free speech and individual privacy, safety and health care access rights. I respectfully urge all members of the committee and their House and Senate colleagues to vote favorably on this measure. Thank you for the opportunity to express my support.

Sincerely,

Andrea J. Cabral, Esq.
Sheriff of Suffolk County


CC: Members of the Committee



*The Commonwealth of Massachusetts*

HOUSE OF REPRESENTATIVES
STATE HOUSE, BOSTON 02133-1054

**STEPHEN L. DiNATALE**
**REPRESENTATIVE**
3RD WORCESTER DISTRICT

————

DISTRICT OFFICE
CITY HALL
718 MAIN STREET
FITCHBURG, MA 01420
TEL. (978) 342-0110

Committees on:
Public Safety and Homeland Security
Higher Education
House Post Audit and Oversight

————

ROOM 146, STATE HOUSE
TEL. (617) 722-2575
Rep.StephenDiNatale@hou.state.ma.us

May 15, 2007

Senator Jarret Barrios, Chairman
Joint Committee on Public Safety & Homeland Security
State House, Room 309
Boston, MA  02133

Representative Michael Costello, Chairman
Joint Committee on Public Safety & Homeland Security
State House, Room 167
Boston, MA 02133

Dear Chairman Barrios and Chairman Costello;

I am writing to voice my support of S1352- an Act Relative to Public Safety (Buffer Zone Bill).  The current Buffer Zone Law allows protesters to get within six feet of a patient or staff person entering a reproductive health care facility. This is completely inadequate.

Our own election laws assign a 150 foot zone outside of each polling location to allow our citizens the right to vote without interference.  People entering health facilities should be given at least a thirty five foot buffer; they certainly deserve the same respect to make a choice without interference.

Reproductive protesters should be allowed to voice their opinion outside of health care facilities; however, a six foot zone does not provide the patients and staff protection from harassment and interference.  This is the reason so many violations have occurred within the last year.

I believe our current Buffer Zone Law outside of health care facilities does not adequately protect our citizens or preserve public safety, therefore, I strongly urge the Committee to release S1352 with a favorable report.

Sincerely,

Stephen L. DiNatale
State Representative



*The Commonwealth of Massachusetts*

HOUSE OF REPRESENTATIVES
STATE HOUSE, BOSTON 02133-1054

**PATRICIA A. HADDAD**
REPRESENTATIVE
5TH BRISTOL DISTRICT

TOWN OFFICE BUILDING
140 WOOD STREET
SOMERSET, MA 02726
TEL (508) 646-2821

Chair:
Committee on Education

ROOM 473G, STATE HOUSE
TEL. (617) 722-2070
FAX (617) 722-2817

May 16, 2007

The Honorable Michael A. Costello, House Chair
The Honorable Jarrett T. Barrios, Senate Chair
The Joint Committee on Public Safety and Homeland Security
State House, Room 40
Boston, MA 02133

Dear Chairman Costello and Chairman Barrios:

I am writing to urge your support of **Senate Bill 1353,** *An Act relative to public safety,* of which I am a co-sponsor.

This bill will work to clarify the existing laws surrounding the safety of patients and employees at reproductive health facilities. Currently, the laws are very vague and as a result of their complexity are very hard to enforce. Patients and employees of these reproductive health facilities ultimately pay the price for the lack of proper enforcement by being subject to verbal and sometimes physical harassment. By establishing a clear, pronounced 35 foot buffer zone, law enforcement officials will have to ability to protect these patients and employees, and maintain a peaceful environment surrounding these facilities

I support **Senate Bill 1353** and respectfully request that the committee report it favorably. Thank you for your consideration.

Sincerely yours,

**PATRICIA A. HADDAD**
Chairwoman
Committee on Education

Printed on Recycled Paper



**The Commonwealth of Massachusetts**

House of Representatives

State House, Boston 02133-1054

**JAY R. KAUFMAN**
STATE REPRESENTATIVE
LEXINGTON - ARLINGTON - WOBURN

THE STATE HOUSE, ROOM 156
TEL. (617) 722-2240
FAX. (617) 722-2774
Rep.JayKaufman@hou.state.ma.us
www.JayKaufman.com

Date:   May 16, 2007

To:     Jarrett T. Barrios, Senate Chair, Joint Committee on Public Safety & Homeland Security
        Michael A. Costello, House Chair, Joint Committee on Public Safety & Homeland
        Security

From:   Jay R. Kaufman, House Chair, Joint Committee on Public Service

Subject:    Support for Senate Bill 1353

I write in support of Senate Bill 1353, An Act Relative to Access to Reproductive Health
Centers, which would expand the Buffer Zone Law of 2000 providing for 35-foot spaces
between those entering reproductive health centers, and protestors and passersby.

As one of the original cosponsors of the buffer zone legislation passed in 2000, I am a strong
supporter of increased buffer zones. Public pressure and intimidation have no place in the minds
of people attempting to make difficult decisions about their reproductive health, or those working
in reproductive health facilities. It is unacceptable for centers such as Planned Parenthood, which
provides services and counseling that is legal, to be places of intimidation and fear. The hostility
that we have seen from those protesting outside of these facilities, punctuated by the 1994
shooting outside of Planned Parenthood's Boston office, is intolerable. It is a matter of public
safety to expand the space between patients and protestors.

Although the 2000 Buffer Zone Law was an important first step in protecting the safety of those
in and around reproductive health centers, this, more stringent law, should be put into place. I am
relieved that times have changed, and the contentious climate surrounding the original bill has
subsided. By now, buffer zones are accepted as a necessary element of both public safety and
public health.  That's progress worth noting and celebrating.

I thank you for the leadership you have shown in this area, and I hope that your Committee will
act promptly to give Senate Bill 1353 a favorable report. If you would like more information or
would like to discuss further my support of this important legislation, please feel free to contact
me at any time at 617-722-2240 or via e-mail at Rep.JayKaufman@hou.state.ma.us.

May 16, 2007

Dear Chairman Barrios, Chairman Costello and members of the Joint Committee on Public Safety and Homeland Security:

I am here to express my support for Senate Bill 1353, "An Act Relative to Public Safety." I am here this day to speak about my own experience as a person of faith who at one point in my life chose abortion. I am here this day to speak about my own experience as a person of faith interacting with anti-choice individuals protesting outside of clinics. I am here this day to speak about my own experience as a person of faith counseling individuals who have chosen abortion and the trauma they experience when interacting with anti-choice protesters who use their faith as a vehicle to judge, to condemn and to intimidate.

I am an ordained American Baptist minister. I was raised in the church by faithful God-loving parents who wanted me to know fully that God loved me and the choices I made in my life. When I was a young woman I discovered I was pregnant and through much prayer and soul-searching decided that I would have an abortion. On the day of my appointment at the clinic I was confronted by protesters who called me a "baby killer" told me I would "go to Hell" and held up pictures and signs that intimidated me. I still went through with my decision to have an abortion. However, the grieving process was different because of the judgment I sensed from these other "people of faith." I knew and trusted that God was with me through my decision and that God loved me for who I was completely. I also trusted that God loved the not-to-be within me.

I have encountered anti-choice protesters in a variety of different settings – in front of clinics and hospitals and in front of a welcoming and affirming gathering at my own denominations Annual Meeting. Each and every time I see these individuals I feel assaulted by their words, by their signs and by their energy. Admittedly these individuals have a right to their own opinion, however to flaunt it in my face and in the faces of others who may have chosen abortion and are going to a clinic for birth control or well-woman care – is highly unfair and demoralizing.

Currently I serve as the chair of the Religious Coalition for Reproductive Choice in MA. We offer a hotline answered by clergy to support women in making reproductive health decisions. Many of these individuals have shared with myself and with other clergy on the hotline that the protesters outside of the clinic have further humiliated them. And it is the religious messages that are used that are the most troubling to these individuals. We remind these women that God is with them in their decision and that the decision to choose abortion is one that many moral, good, upstanding, women of faith have made for many years. The voices and the signs and the overall message of anti-choice protesters is intimidating. Women of all faiths – and of no faith at all – deserve the opportunity to make a choice for abortion or get care from a reproductive health clinic without fear of these individuals.

As a person of faith, a clergy person and on behalf of other women and men of faith who are making the decision for abortion and those who are striving for better reproductive health through caring for their bodies – I urge you to support the Buffer Zones Bill. This is a Bill for the protection of individuals from being harassed as they are making the best choices and decisions they can for their bodies and for their families, trusting that their God is with them throughout the process.

Reverend Susan B. Criscione

As clergy in the state of MA we write in support of the Buffer Zones Senate Bill 1353 which would establish a 35-foot fixed buffer zone outside of the entrances to reproductive health care facilities in Massachusetts. This would amount to a more meaningful and enforceable buffer zone in order to prevent violence and harassment of patients and staff.

Many of us serve as All-Options counselors with the Religious Coalition for Reproductive Choice in MA. We work closely with reproductive health providers to support them in their work with women of faith – particularly those who are struggling with decisions around pregnancy. We are available to counsel women and families as they prayerfully discern what is the best choice for them in their particular situation. Many of the women who speak with us have been called "baby killers" and told that God will send them to hell for their decision. Suffice to say, our faiths have different teachings.

People of faith support women's ability to make moral choices for their reproductive health. People of faith support the Buffer Zones Bill. People of faith support women of all faiths – and of no faith – to have access to reproductive healthcare, including abortion, free from harassment, coercion and abuse.

Rev. Jennifer Barrett
Pastoral Resident
Wellesley Congregational Church (UCC)

Rev. Dr. Barbara Coeyman
Amherst, MA

Rev. Susan Criscione; RCRC of MA Board President

The Reverend Anne C. Fowler
St. John's Episcopal Church
Jamaica Plain, MA

The Reverend Cheryl Leshay
Director, Greater Worcester Unitarian Universalist Campus Ministries
Affiliated Community Minister, UU Church of Worcester

Rev. Aaron R. Payson, Pastor
The Unitarian Universalist Church of Worcester

Rabbi Dennis S. Ross
Worcester, MA

Rev. Rachel Tedesco
Parish Minister
The First Parish Church in Taunton

Rev. Victoria Weinstein, Minister
First Parish Unitarian Church in Norwell

And the Board of the Religious Coalition for Reproductive Choice in MA; P.O. Box 1129; Brookline, MA 02446