IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

| | | |
|---|---|---|
| **ELEANOR McCULLEN, JEAN BLACKBURN ZARRELLA, GREGORY A. SMITH, CARMEL FARRELL, ERIC CADIN, CYRIL SHEA, DONALD GOLDEN, NANCY CLARK, MARK BASHOUR And NOREEN BEEBE,** | ) ) ) ) ) ) ) ) | |
| | ) | **Civil Action 1:08-CV-10066-JLT** |
| Plaintiffs, | ) ) | |
| **v.** | ) ) | |
| | ) | |
| **MARTHA COAKLEY,** Attorney General for the COMMONWEALTH OF MASSACHUSETTS**, DANIEL F. CONLEY**, District Attorney for Suffolk County, **MICHAEL W. MORRISSEY**, District Attorney for Norfolk County, **MARK G. MASTROIANNI**, District Attorney for Hampden County, and **JOSEPH D. EARLY**, District Attorney for Worcester County, | ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants | ) | |

_____

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS,
DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF
LEAVE TO AMEND GRANTED DECEMBER 29, 2010
_____

## I.      PRELIMINARY STATEMENT

1.      This is a civil rights action brought pursuant to 42 U.S.C. § 1983 challenging the constitutionality, facially and as applied, of Mass. Gen. L. chapter 266: Section 120E1/2(b), as amended, which creates a fixed buffer with a radius of 35-feet (hereafter, "zone") around the entrances, exits, and driveways of reproductive health care facilities that perform abortions (hereafter, "the Act").

2.     The Act is an unconstitutional regulation designed and intended to ban virtually all citizens from engaging in fundamental rights and liberties on significant portions of public sidewalks and streets adjacent to non-hospital abortion clinics. It essentially and unlawfully privatizes public ways held in the public trust for use by all citizens.

3.     The Act chills and deprives Plaintiffs and third parties from engaging in expressive activities guaranteed by the First and Fourteenth Amendments to the United States Constitution.  Preliminary and permanent injunctive relief is warranted.

## II.     JURISDICTION AND VENUE

4.      This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1983. The Court has jurisdiction over the request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

5.     Venue is proper in the District of Massachusetts, Boston Division, pursuant to 28 U.S.C. § 1391(b)(1).

## III.     IDENTIFICATION OF PLAINTIFFS

6.     Plaintiff Eleanor McCullen is a citizen of the United States and a resident of Chestnut Hill, Massachusetts.  She is a 74 year-old mother and grandmother.  She has never been arrested.

7.     Plaintiff Jean Blackburn Zarrella is a citizen of the United States and a resident of Lynnfield, Massachusetts.  She is an 84 year-old mother and grandmother. She has never been arrested.

8.     Plaintiff Gregory A. Smith is a citizen of the United States and a resident of Stoughton, Massachusetts.  He is a 77 year-old father and grandfather.

9.     Plaintiff Carmel Farrell is a citizen of the United States and a resident of Plymouth, Massachusetts.  She is a 64 year-old mother and grandmother.  She has never been arrested.

10.    Plaintiff Eric Cadin is a citizen of the United States and a resident of Weymouth, Massachusetts.  He is a 30 year-old single adult male who is studying pre-med at Harvard University.  He has never been arrested.

11.    Plaintiff Cyril Shea, M.D. is a citizen of the United States and a resident of West Springfield, Massachusetts.  He is 83 years old and a retired orthopedic surgeon. He has never been arrested.

12.    Plaintiff Donald Golden is a citizen of the United States and a resident of Longmeadow, Massachusetts.  He is 60 years old.  He has never been arrested.

13.    Plaintiff Nancy Clark is a citizen of the United States and a resident of Worcester, Massachusetts.  She is 48 years old and the mother of nine (9) children.  She has never been arrested.

14.    Plaintiff Mark Bashour is a citizen of the United States and a resident of Northboro, Massachusetts.  He is 50 years old.

15.    Plaintiff Noreen Beebe is a citizen of the United States and a resident of Florence, Massachusetts.  She a 62 year old mother and grandmother.  She has never been arrested.

### IV.        IDENTIFICATION OF DEFENDANTS

16.    Defendant Martha Coakley is Attorney General for the Commonwealth of Massachusetts and, in that capacity, is the chief law enforcement officer for the

Commonwealth. She is charged with overseeing prosecutions for violations of the Act. She is sued in her official capacity only.

17.  Defendant Daniel F. Conley is district attorney for Suffolk County, Massachusetts and, in that capacity, is charged with enforcing state law in Boston, Massachusetts. He is sued in his official capacity only.

18.  Defendant Michael W. Morrissey is district attorney for Norfolk County, Massachusetts and, in that capacity, is charged with enforcing state law in Brookline, Massachusetts. He is sued in his official capacity only.

19.  Defendant Mark G. Mastroianni is district attorney for Hampden County, Massachusetts and, in that capacity, is charged with enforcing state law in Springfield, Massachusetts. He is sued in his official capacity only.

20.  Defendant Joseph D. Early Jr. is district attorney for Worcester County, Massachusetts and, in that capacity, is charged with enforcing state law in Worcester Massachusetts. He is sued in his official capacity only.

## V.  ALLEGATIONS OF FACT

21.  Subsection (b) of the Act states,

> No person shall knowingly enter or remain on a public way or sidewalk adjacent to a reproductive health care facility within a radius of thirty-five feet of any portion of an entrance to, exit from, or driveway of a reproductive health care facility, or within the area within a rectangle created by extending the outside boundaries of any entrance to, exit from, or driveway of, a reproductive health care facility in straight lines to the point where such lines intersect the sideline of the street in front of such entrance, exit or driveway. This subsection shall not apply to the following:
>
> persons entering or leaving such facility;
>
> employees or agents of such facility acting within the scope of their employment;

law enforcement, ambulance, firefighting, construction, utilities, public works and other municipal agents acting within the scope of their employment;

persons using the public sidewalk or street right-of-way adjacent to such facility solely for the purpose of reaching a destination other than such facility.

22.     Subsection (c) of the Act provides that subsection (b) shall take effect during a facility's business hours and if the area contained within the radius and rectangle described in said subsection (b) is clearly marked and posted.

23.     Subsection (d) of the Act makes criminal a violation of subsection (b) of same, providing that,

[w]hoever knowingly violates this section shall be punished, for the first offense, by a fine of not more than $500 or not more than three months in a jail or house of correction, or by both such fine and imprisonment, and for each subsequent offense, by a fine of not less than $500 and not more than $5,000 or not more than two and one-half years in a jail or house of correction, or both such fine and imprisonment.

24.     Subsection (e) of the Act makes it unlawful to obstruct, detain, hinder, impede or block another person's entry to or exit from a reproductive health care facility. Plaintiffs do not challenge this subsection.

25.     The Act was adopted on a purported emergency basis and became effective on November 13, 2007, the date the Act was signed by the Governor.

26.     The stated underlying purpose for the Act, as set forth in the preamble to the bill introduced and numbered Senate Bill 1353, is to comply with the State's fundamental obligation to preserve public safety by creating clearly defined boundaries to improve the ability of safety officials to protect the public -- specifically pedestrians travelling peacefully on Massachusetts streets and sidewalks.

27.     By its plain terms, the Act applies only to reproductive health care facilities that perform abortions. Hospitals in which abortions are performed are excluded from the Act.

28.     A sign is posted and line drawn in yellow paint in a 35-foot radius around the front entrance to Allston-Brighton Planned Parenthood, 1055 Commonwealth Avenue, Boston, which is located at the corner of Commonwealth Avenue and Alcorn Street (hereafter, "Allston-Brighton Planned Parenthood").  The marked zone covers all but approximately 12 inches of the public sidewalk directly in front of the facility and adjacent to Commonwealth Avenue.  The zone extends approximately 6 feet into Alcorn Street parallel to Commonwealth Avenue and approximately 12 feet around the corner down Alcorn Street.  In addition, there is a sign posted and a 35-foot zone marked around the rear entrance to the facility.  The rear zone encompasses nearly the entire street (Gardner Street) adjacent to the rear entrance.

29.     Signs are posted and two zones marked - each with a 35-foot radius - around two passageways alongside the building housing Women's Health Services, 111 Harvard Street, Brookline (hereafter, "Women's Health Services").  One passageway appears to be a driveway leading into the parking lot of 111 Harvard Street, and the other a private street called Harvard Court that leads to buildings behind 111 Harvard Street.

30.     These two zones encompass nearly 182.5 linear feet of the public sidewalk in front of the building housing Women's Health Services.  The zones extend to the double-yellow line in the middle of Harvard Street, a busy main thoroughfare.

31.     Signs are posted and five zones marked - each with a 35-foot radius – around the driveways of a three-building medical office complex that houses Planned

Parenthood, 3550 Main Street, Springfield (hereafter, "Springfield Planned Parenthood"). The buffer zones occupy approximately 500 linear feet of the public sidewalk along Main Street and Wason Avenue. Each of the zones extends to the double-yellow line in the middle of Main Street or Wason Avenue. The entrances to the building housing Springfield Planned Parenthood are set back 335 feet from Main Street and 220 feet from Wason Avenue.

32.     A bus stop is located near one of the Main Street buffer zones. Sometimes people waiting for the bus sit on the grass under a tree located within the buffer zone.

33.     Signs are posted and two zones marked - each with a 35-foot radius – around the purported driveways of the building that houses Planned Parenthood, 470 Pleasant Street, Worcester (hereafter, "Worcester Planned Parenthood"). One zone is located on Pleasant Street and the other on Dewey Street. The buffer zones occupy approximately 177.3 linear feet of the public sidewalk along Pleasant and Dewey Streets. Each zone occupies a large portion of the public street in addition to public sidewalks. The Pleasant Street zone is marked adjacent to an area that purports to be a driveway entrance but is not used for that purpose. The doorway entrance to Planned Parenthood at this location is 63.3 feet from the nearest public street curb.

34.     Plaintiffs are pro-life advocates motivated to oppose the practice of abortion because of their religious and/or moral beliefs that induced abortion is the deliberate destruction of innocent human life. Plaintiffs regularly travel to the public ways adjacent to reproductive health care facilities in Massachusetts to peacefully provide information about abortion alternatives and to offer assistance and support to persons entering and/or exiting the facility.

35.     As part of their ministry and/or peaceful pro-life advocacy, Plaintiffs offer secular and religious literature to persons approaching reproductive health care facilities (hereinafter "clinic clients"). Plaintiffs do this in an effort to educate clinic clients and others that alternatives to abortion are available, including adoption and other means of support, including financial and/or emotional support. In addition to distributing literature, one or more Plaintiffs engage in other peaceful expressive activities on the public ways adjacent to reproductive health care facilities including oral advocacy, counseling, and prayer.

36.     Plaintiffs desire to orally communicate with clinic clients and passersby from a distance in which they can speak in a normal conversational tone and make eye contact.  Plaintiffs wish to avoid raising their voices or speaking from long distances.

37.     Because in most instances they cannot identify clinic clients until they actually approach the reproductive health care facility, Plaintiffs and other pro-life advocates must station themselves on the public ways near the path of pedestrians and in close proximity to facility entrances and driveways in order to effectively communicate their message.   On many occasions, clinic clients and/or their companions willingly receive such oral communications

38.     In order to effectively distribute literature to clinic clients and other persons entering or exiting reproductive health care facilities, Plaintiffs and other pro-life advocates must stand on public sidewalks and streets near the path of pedestrians so they can proffer literature near the hands of passersby.  On many occasions, clinic clients and/or their companions willingly receive such literature.

39.     Plaintiffs and other pro-life advocates have encountered opposition from pro-choice advocates who surround, cluster, yell, make noise, mumble, and/or talk loudly to clinic clients for the purpose of disrupting or drowning out pro-life speech and thwart Plaintiffs' efforts to distribute literature.  When this happens, pro-life advocates cannot be heard or distribute literature unless they are in close proximity to their intended audience.

40.     After the enactment of the Act, facility employees and/or agents sometimes stand idly on the public sidewalks and streets inside the zone including its outermost edge.  Sometimes they smoke, drink coffee, or make phone calls and at other times they engage in conversation with each other.  They have done this even when clinic clients were not present.

41.     Sometimes persons accompanying women seeking abortions come out of the facility and linger within the area encompassed by the zone to smoke cigarettes, make phone calls, or stand around for no apparent purpose.

42.     Immediately after significant snow accumulations the streets adjacent to the above-referenced clinics are plowed.  In such circumstances, the existence of snow piles can make it impossible or very difficult for Plaintiffs to (a) see the sidewalk markings delineating the zones, (b) position themselves at the outside of the zones, (c) get around the zone to speak with listeners on the other side of the zones, and/or (d) stand near the path of pedestrians.

43.     Plaintiff McCullen has been offering information about alternatives to abortion and providing offers of support to incoming clients and others at Allston-Brighton Planned Parenthood, at which abortions are performed, for the past 7 years.  On numerous occasions women seeking abortion changed their minds as a result of

McCullen's sidewalk counseling.  McCullen's experience has been that her counseling is effective when offered to the recipient in a normal conversational tone and in a friendly and gentle manner.  She always tries to stand near the path of pedestrians.

44.     Since the Act took effect there have been several occasions when clinic clients entered the marked zone at Allston-Brighton Planned Parenthood from the side opposite where McCullen was standing.  McCullen was unable to navigate around the zone before the clients entered the facility and thus was unable to effectively communicate her message.

45.     Plaintiff Zarrella has been has been offering information about alternatives to abortion and providing offers of support to incoming clients for the past 17 years. On numerous occasions women seeking abortion changed their minds as a result of Zarrella's sidewalk counseling.  Zarrella's experience has been that her counseling is effective when offered to the recipient in a normal conversational tone and in a friendly and caring manner.  She also has found that eye contact is essential to effective communication so she tries to stand near the path of pedestrians.   Since the Act took effect, the buffer zone has impeded her ability to communicate in this manner.

46.     Plaintiff Smith has peacefully prayed the Rosary at Allston-Brighton Planned Parenthood for the past 17 years.  When doing so he usually prays with others to make his message more effective.  Prior to the Act's enactment Smith prayed the Rosary inside the zone.  Since the Act's adoption he has refrained from doing so.  Smith desires to pray inside the zone but fears arrest or citation if he does so.  In addition to prayer Smith displays a Crucifix.

47.     Plaintiff Cadin has been offering information and support at the Allston-Brighton Planned Parenthood for approximately 4-½ years.  He offers both men and women alternatives to abortion through oral communications and by distributing literature.  Prior to enactment of the Act, Cadin would often stand next to men or women who exited the facility to smoke cigarettes.  This area is now located within the zone. Cadin's experience has been that his offers of help are effective when made in close proximity to the recipient, with a smile, and in a calm and gentle demeanor which tends to put both men and women at ease.

48.     On several occasions since the Act took effect, Plaintiffs McCullen and Cadin were nearly struck by vehicles turning onto Alcorn Street from Commonwealth Avenue as they attempted to communicate with clinic clients without transgressing the marked zone.

49.     Plaintiff Farrell engages in expressive activities at Women's Health Service, 111 Harvard Street, Brookline.  The two marked zones at this location make it impossible for Farrell to stand near the path of pedestrians or vehicles entering the driveways, and entirely forecloses her ability to leaflet to unwilling and even willing recipients.  The marked zones also prevent her from speaking to clinic clients in a normal conversational tone.

50.     Plaintiffs Shea, Golden, and Beebe engage in peaceful expressive activities at Springfield Planned Parenthood.  The five marked zones at this location make it impossible for them to stand near the path of pedestrians or vehicles entering the driveways, and entirely forecloses their ability to leaflet to unwilling and even willing

recipients.  The marked zones also prevent them from speaking to clinic clients in a normal conversational tone or from a normal conversational distance.

51.  Since the Act took effect, cars on Wason Ave. sometimes swerve to avoid the buffer zone line, which extends into and is painted on the street, endangering public safety.

52.  Plaintiffs Clark and Bashour engage in peaceful expressive activities at Worcester Planned Parenthood.  The two marked zones at this location make it impossible for them to stand near the path of pedestrians or vehicles entering the driveways, and entirely forecloses their ability to leaflet to unwilling and even willing recipients.  The marked zones also prevent them from speaking to clinic clients in a normal conversational tone or from a normal conversational distance.

53.  Public sidewalks and streets in Massachusetts are used by third parties not before the Court (hereafter, "third parties") for non-abortion related peaceful speech or assembly activities such as labor picketing, anti-war and environmental demonstrations, labor organizing, hawking newspapers or magazines, soliciting charitable contributions, circulating petitions, panhandling, and spur-of-the-moment conversations with friends or acquaintances.  They also are used for such innocent non-speech activities as simple loitering, waiting for public or private transportation, smoking cigarettes, or simply strolling about without an intended destination.

54.  Massachusetts citizens have been using the public streets and sidewalks to debate political, social, and religious issues since well before the Founding of the United States.

55.    The Act prevents Plaintiffs and third parties from approaching both willing and unwilling listeners within the zone.

56.    The Act severely burdens Plaintiffs' and third parties' ability to win the attention of both willing and unwilling listeners and, consequently, from reaching the minds of their intended audience.  Some people may have difficulty reading signs or hearing clearly from 35 feet away, or even lesser distances.

57.    The Act prevents Plaintiffs and third parties from engaging in oral communications in a normal conversational tone with persons located in certain areas within or without the zone.

58.    The Act severely burdens Plaintiffs' and third parties' ability to distribute literature to willing recipients located in certain areas within or without the zone.

59.    The Act forecloses altogether Plaintiffs' and third parties' ability to distribute literature to unwilling recipients located in certain areas within the zone.

60.    The Act prevents Plaintiffs and third persons from standing within the zone near the path of oncoming pedestrians when proffering their material, thereby making it difficult for pedestrians to accept such material.

61.    The Act, as applied at the challenged locations, does not allow speakers adequate alternative channels of communication

62.    The Act prevents Plaintiffs and third parties from approaching, in an inoffensive way, persons within the zone for the purpose of offering information with a view to influencing actions that may have an imminent and irreversible consequence.

63.     The Act prevents both willing and unwilling listeners from receiving certain oral communications, including pro-life communications, in a normal conversational tone or from a normal conversational distance.

64.     The Act prevents willing recipients from easily receiving certain types of literature, including pro-life literature, if they are in close proximity to clinic entrances, exits, and driveways.

65.     The Act prevents Plaintiffs and third parties from utilizing large portions of public sidewalks and streets adjacent to reproductive health care facilities for any purpose other than reaching a destination other than such facility.

66.     The Act by its terms exempts certain classes of individuals from its reach, including health care facility employees and agents, thereby granting them free, unrestricted, and unhindered access to the zone regardless of purpose.

67.     The Act by its terms exempts certain classes of individuals from its reach, including health care facility employees and agents, thereby permitting them to freely engage in all manner of expressive activity inside the zone.

68.     The Act creates public safety hazards by forcing Plaintiffs and third parties to stand or walk in portions of the public street occupied by vehicular traffic.

69.     The Act creates public safety hazards by decreasing the flow of traffic and creating congestion on those portions of public streets occupied by vehicular traffic.

70.     In each of the challenged locations, the size and location of the zone(s) place a substantial burden on Plaintiffs' ability to orally communicate, leaflet, and display signs toward clinic clients and their companions.

71.     The size and location of the zone(s) render ineffective Plaintiffs' attempts to orally communicate, leaflet, and display signs toward their intended audience.

72.     The size and location of the zone(s) virtually eliminate Plaintiffs' ability to leaflet.

73.     The legislative record is insufficient to support the draconian measures contained in the Act that severely infringe First Amendment rights and constitutionally protected liberty interests.

74.     Since the Act was adopted, Plaintiffs desired to engage in distribution of literature, oral advocacy, and/or prayer on public streets and sidewalks located within a 35-foot radius of entrances, exits, and driveways of reproductive health care facilities but refrained from doing so out of fear of arrest and prosecution for violating the Act.

75.     Each of the Plaintiffs has a present and future desire and intention to engage in distribution of literature, oral advocacy, and/or prayer on public streets and sidewalks located within a 35-foot radius of entrances, exits, and driveways of reproductive health care facilities but will refrain from doing so out of fear they will be arrested by police for violating the Act.

76.     Plaintiffs have no plain, adequate, or complete remedy at law to redress the foregoing violations of their constitutional rights and liberty interests, and this suit for injunction and declaratory judgment is their only means of securing complete and adequate relief.   No other remedies would offer Plaintiffs substantial and complete protection from Defendant's unlawful laws, statutes, policies, and practices.

## VI.    ALLEGATIONS OF LAW

77.    The Act alleged herein is enforced or enforceable by Defendants under the color and pretense of the laws, statutes, and policies of the Commonwealth of Massachusetts and/or its political subdivisions.

78.    The loss of First Amendment freedoms for even minimal periods of time unquestionably constitutes irreparable injury.

79.    The public ways affected by the Act are quintessential public forums for expressive activities guaranteed by the First and Fourteenth Amendments to the United States Constitution.

80.    The right to engage in peaceful expressive activity, assembly, and association in quintessential public forums is guaranteed by the Free Speech and Assembly Clauses of the First and Fourteenth Amendments to the United States Constitution.

81.    The right to peacefully distribute literature in quintessential public forums is guaranteed by the Free Speech and Free Press Clauses of the First and Fourteenth Amendments to the United States Constitution.

82.    The right to engage in peaceful prayer, worship, and religious song in quintessential public forums is guaranteed by the Free Speech and Free Exercise Clauses of the First and Fourteenth Amendments to the United States Constitution.

83.    The fact that certain messages may be offensive to some of their recipients does not deprive them of constitutional protection.

84.    The right to receive information is guaranteed by the First and Fourteenth Amendments to the United States Constitution.

85.     The Act infringes the rights of willing recipients to receive literature and oral communications and therefore violates the First and Fourteenth Amendments to the United States Constitution.

86.     The right to travel and remain in the public place of one's choice is an aspect of personal liberty guaranteed by the Fourteenth Amendment to the United States Constitution.

87.     The right to loiter for innocent purposes on public ways is an aspect of personal liberty guaranteed by the Fourteenth Amendment to the United States Constitution.

88.     The Act chills and deters fundamental constitutional rights of Plaintiffs and third parties.

**FIRST CAUSE OF ACTION - 42 U.S.C. § 1983**
**(Free Speech – Time, Place, Manner)**
**(Asserted by ALL PLAINTIFFS on an as-applied basis; facial claim retained by**
**Plaintiffs McCullen, Zarrella, Smith, Farrell, and Cadin for purposes of appeal)**

89.     Paragraphs 1 through 88 of the Complaint are incorporated herein by reference, same as though pleaded in full.

90.     Public streets and sidewalks are quintessential public forums for speech.

91.     The government's ability to restrict speech in public forums is very limited.

92.     The Act burdens substantially more speech than necessary to achieve a substantial and legitimate government interest.

93.     The Act is not a valid time, place, and manner regulation.

94.     The Act is not narrowly tailored

95.     The Act does not serve a significant governmental interest.

96.     The Act does not leave open ample alternative channels of communication.

97.     The audience intended to be reached by peaceful oral advocacy and the distribution of literature cannot be reached nearly as well by non-prohibited means.

98.     The Act, as applied, has almost completely foreclosed a unique and important means of communication.

99.     The Act, on its face and as applied, is an unconstitutional abridgement of Plaintiffs' affirmative rights to free speech secured by the First and Fourteenth Amendments to the United States Constitution.

100.    The existence and enforcement of the Act chills and deprives Plaintiffs of their rights to free speech.   Plaintiffs are suffering irreparable harm to their First Amendment rights.

**SECOND CAUSE OF ACTION - 42 U.S.C. § 1983**
**(Free Speech – Substantial Overbreadth)**
**(Retained by Plaintiffs McCullen, Zarrella, Smith, Farrell, and Cadin**
**for purposes of appeal)**

101.    Paragraphs 1 through 88 of the Complaint are incorporated herein by reference, same as though pleaded in full.

102.    Public streets and sidewalks are quintessential public forums for speech.

103.    The very existence of the Act may cause others not before the Court to refrain from constitutionally protected speech or expression.

104.    The Act is an overly-broad restriction on speech because it sweeps within its ambit a substantial amount of constitutionally protected speech.

105.    The Act burdens substantially more speech than is necessary to achieve a substantial and legitimate government interest.

106.     The Act on its face is an unconstitutional abridgement of rights to free speech secured by the First and Fourteenth Amendments to the United States Constitution.

107.     The existence and enforcement of the Act chills and deprives Plaintiffs and third parties not before the Court of their rights to free speech.  Plaintiffs and third parties are suffering irreparable harm to their First Amendment rights.

**THIRD CAUSE OF ACTION - 42 U.S.C. § 1983**
**(Free Speech – Prior Restraint)**
**(Retained by Plaintiffs McCullen, Zarrella, Smith, Farrell, and Cadin**
**for purposes of appeal)**

108.     Paragraphs 1 through 88 of the Complaint are incorporated herein by reference, same as though pleaded in full.

109.     Public streets and sidewalks are quintessential public forums for speech.

110.     The government's ability to restrict speech in public forums is very limited.

111.     The Act completely bans Plaintiffs and third parties from engaging in any expressive activities within the zone.

112.     The Act forecloses Plaintiffs and third parties from orally communicating to persons within the zone from a normal conversational distance.

113.     The Act forecloses Plaintiffs and third parties from standing within the zone near the path of oncoming pedestrians and proffering their material.

114.     The Act effectively forecloses Plaintiffs' and third parties' ability to orally communicate with both willing and unwilling listeners located within the zone.

115.     The Act effectively forecloses Plaintiffs' and third parties' ability to distribute literature to both willing and unwilling recipients located within the zone.

116.    The Act severely burdens Plaintiffs' and third parties' ability to effectively display signs.

117.    The Act does not leave open ample alternative avenues of communication.

118.    The Act burdens substantially more speech than is necessary to achieve a substantial and legitimate government interest.

119.    The Act, on its face and as applied, is an unconstitutional abridgement of Plaintiffs' affirmative rights to be free from impermissible prior restraint in violation of the First and Fourteenth Amendments to the United States Constitution.

120.    The existence and enforcement of the Act chills and deprives Plaintiffs and third parties of their rights to free speech.  Plaintiffs and third parties are suffering irreparable harm to their First Amendment rights.

**FOURTH CAUSE OF ACTION - 42 U.S.C. § 1983**
**(Free Speech – Free Association – Free Exercise Hybrid)**
**(Retained by Plaintiffs McCullen, Zarrella, Smith, Farrell, and Cadin**
**for purposes of appeal)**

121.    Paragraphs 1 through 88 of the Complaint are incorporated herein, same as though pleaded in full.

122.    Public streets and sidewalks are quintessential public forums for speech.

123.    Peaceful expressive activities, including oral communications, literature distribution, and sign display, are rights guaranteed by the Free Speech and Press Clauses of the First and Fourteenth Amendments to the United States Constitution.

124.    Peaceful use of public streets and sidewalks for the purpose of seeking political, social, moral, or religious change is a right guaranteed by the Free Assembly Clause of the First and Fourteenth Amendments to the United States Constitution.

125.    Peaceful grouping of two or more persons for the purpose of enhancing communicative efforts, i.e., the right to associate, is guaranteed by First and Fourteenth Amendments to the United States Constitution.

126.    Peaceful public prayer, singing, and worship, and display of religious articles are rights guaranteed by the Free Exercise Clause of the First and Fourteenth Amendments to the United States Constitution.

127.    Infringement of the right to free exercise of religion exercised in combination of other fundamental constitutional rights subjects the Act to strict scrutiny review.

128.     The Act does not serve a compelling state interest nor is it the least restrictive means of achieving the State's asserted interest.

129.    The existence and enforcement of the Act chills and deprives Plaintiffs of their rights to free speech, free press, free assembly, and free exercise of religion. Plaintiffs are suffering irreparable harm to their First Amendment rights.

**FIFTH CAUSE OF ACTION - 42 U.S.C. § 1983**
**(Free Speech –Viewpoint Discrimination)**
**(Retained by Plaintiffs McCullen, Zarrella, Smith, Farrell, and Cadin**
**for purposes of appeal)**

130.    Paragraphs 1 through 88 of the Complaint are incorporated herein by reference, same as though pleaded in full.

131.    The Act is a content-based restriction on speech.

132.    The Act does not serve a compelling state interest.

133.    The Act is not the least restrictive means of achieving the State's asserted interest.

134.    The Act, on its face and as applied, is an unconstitutional abridgement of Plaintiffs' affirmative rights to free speech secured by the First and Fourteenth Amendments to the United States Constitution.

135.    The existence and enforcement of the Act chills and deprives Plaintiffs and third parties of their rights to free speech.  Plaintiffs and third parties are suffering irreparable harm to their First Amendment rights.

### SIXTH CAUSE OF ACTION - 42 U.S.C. § 1983
### (Due Process - Vagueness)
### (Retained by Plaintiffs McCullen, Zarrella, Smith, Farrell, and Cadin for purposes of appeal)

136.    Paragraphs 1 through 88 of the Complaint are incorporated herein by reference, same as though pleaded in full.

137.    Public streets and sidewalks are quintessential public forums for speech.

138.    Public streets and sidewalks are held in the public trust for use by all law-abiding citizens.

139.    The Act excludes from its reach "persons using the public sidewalk or street right-of-way adjacent to such facility solely for the purpose of reaching a destination other than such facility."

140.    The Act does not give fair notice to citizens.

141.    The Act does not provide minimal standards to guide law enforcement.

142.    Whether a person is using a public sidewalk "solely" for the purpose of reaching a destination other than a reproductive health care facility cannot be known by a law enforcement officer.

143.    Because a police officer cannot know with certainty whether a person is using a public sidewalk or street "solely" for the purpose of reaching a destination other

than a reproductive health care facility, the Act necessarily entrusts lawmaking to the moment-to-moment judgment of the policeman on his beat.

144.     Because a police officer cannot know with certainty whether a person is using a public sidewalk or street "solely" for the purpose of reaching a destination other than a reproductive health care facility, the Act authorizes and encourages arbitrary and discriminatory enforcement.

145.     The Act is impermissibly vague because it fails to establish standards for the police that are sufficient to guard against the arbitrary and discriminatory suppression of First Amendment rights.

146.     The Act is impermissibly vague because it fails to establish standards for the police that are sufficient to guard against arbitrary deprivation of liberty interests.

147.     The Act, on its face and as applied, is an unconstitutional abridgement of Plaintiffs' and third parties' affirmative rights in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

### SEVENTH CAUSE OF ACTION - 42 U.S.C. § 1983
### (Due Process – Liberty Interest)
### (Retained by Plaintiffs McCullen, Zarrella, Smith, Farrell, and Cadin
### for purposes of appeal)

148.     Paragraphs 1 through 88 of the Complaint are incorporated herein by reference, same as though pleaded in full.

149.     Public streets and sidewalks are held in the public trust for use by all law-abiding citizens.

150.     The right of an individual to remain in the public place of his choice is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

151.     The freedom to loiter for innocent purposes is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

152.     The Act denies Plaintiffs and third persons their liberty interests in the use of public streets and sidewalks for innocent purposes and their rights to intrastate travel in violation of the Fourteenth Amendment to the United States Constitution.

153.     The Act, on its face and as applied, is an unconstitutional abridgement of Plaintiffs' and third parties' liberty interests in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## EIGHTH CAUSE OF ACTION - 42 U.S.C. § 1983
### (Equal Protection)
### (Retained by Plaintiffs McCullen, Zarrella, Smith, Farrell, and Cadin
### for purposes of appeal)

154.     Paragraphs 1 through 88 of the Complaint are incorporated herein by reference, same as though pleaded in full.

155.     Public streets and sidewalks are quintessential public forums for the exercise of constitutionally protected expressive activities and certain liberty interests.

156.     The right of an individual to remain in the public place of his choice is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

157.     The Act prohibits most citizens from accessing the zone for all purposes other than to reach a destination other than the reproductive health care facility located within it.

158.   The Act, by its express terms, exempts from its reach certain defined classes of persons thereby permitting them to freely engage in all manner of expressive activity and liberty interests pertaining to the public ways.

159.   With respect to the exercise of expressive activity and liberty interests, Plaintiffs and third parties are similarly-situated to exempted classifications yet treated in a dissimilar manner.

160.   The Act impinges fundamental rights and liberty interests and therefore is subject to strict scrutiny review.

161.   The Commonwealth cannot demonstrate a compelling interest for the differing classifications nor is the Act the least restrictive means of achieving its asserted interest.

162.   The Act, on its face and as applied, is an unconstitutional abridgement of Plaintiffs' and third parties' rights to equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that the Court:

a.   Assume jurisdiction over this action;

b.   Declare that Mass. Gen. L. chapter 266: Section 120E1/2(b) is unconstitutional on its face; **[retained by Plaintiffs McCullen, Zarrella, Smith, Farrell, and Cadin for purposes of appeal]**

c.   Declare that Mass. Gen. L. chapter 266: Section 120E1/2(b) is unconstitutional as applied to Plaintiffs' expressive activities at the above-referenced locations;

d.      Enter preliminary and permanent injunctions enjoining Defendant from

enforcing Mass. Gen. L. chapter 266: Section 120E1/2(b);

e.      Award Plaintiffs their costs of litigation, including reasonable attorneys'

fees and expenses, pursuant to 42 U.S.C. § 1988; and

f.      Grant such other and further relief as the Court deems necessary and proper.

FOR THE PLAINTIFFS

/s/ Mark L. Rieni_____
Mark L. Rienzi, Esq.
The Catholic University of America
Columbus School of Law
3600 John McCormack Road, NE
Washington, D.C. 20064
(202) 319-5140
rienzi@law.edu

/s/ Philip D. Moran
Philip D. Moran, MA Bar # 353920
Philip D. Moran P.C.
265 Essex Street, Suite 202
Salem, Massachusetts 01970
Tel: (978) 745-6085
Fax: (978) 741-2572
Email: philipmoranesq@aol.com

/s/ Michael J. DePrimo
Michael J. DePrimo, CT Bar # 402211
Admitted *pro hac vice*
Attorney at Law
778 Choate Avenue
Hamden, CT 06518
Tel:  (203) 281-1496
Fax: (203) 281-1496
Email: michaeldeprimo@gmail.com

Benjamin W. Bull, AZ Bar # 009940
Admitted *pro hac vice*
Alliance Defense Fund
15100 N. 90th Street
Scottsdale, Arizona 85260
Tel: (480) 444-0020

Fax: (480) 444-0028
Email: bbull@telladf.org

Kevin H. Theriot, KS Bar # 21565
Admitted *pro hac vice*
Alliance Defense Fund
15192 Rosewood
Leawood, Kansas 66224
Tel: (913) 685-8000
Fax: (913) 685-8001
Email: ktheriot@telladf.org

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed electronically through the Electronic

Case Filing (ECF) system and thus copies will be sent electronically to the registered

participants on the Notice of Electronic Filing.

/s/ Mark L. Rienzi

Mark L. Rienzi